Argued December 3, 1936; reargued February 18; affirmed March 9;
rehearing denied May 11, 1937

In re Workman's Estate

CARRUTHERS *v.* COBB et al.

(65 P. (2d) 1395, 68 P. (2d) 479)

*Charles M. Thomas* and *W. E. Richardson,* both of Portland, for appellant.

*Wilber Henderson,* of Portland (Henderson & Warner, of Portland, on the brief), for respondents.

ROSSMAN, J. This is an appeal by H. J. Carruthers, executor of the estate of Harper Workman, deceased, from two orders of the circuit court of Multnomah county, probate department. The first order denied a petition filed by Carruthers January 27, 1936, and the second denied a petition filed April 22, 1936. The second petition in all of its material parts was a duplicate of the first. The following is a summary of the second petition: After Workman's death and the admission of his will to probate, the appellant, who was nominated in the will as executor, applied to the circuit court for an order appointing him to that office, but his application was denied, and A. C. Callan, one of the respondents, was appointed administrator with the will annexed. The appellant appealed to this court, with the result that the order denying his appointment and appointing Callan was reversed by a decision announced October 8, 1935. See *In re Workman's Estate,* 151 Or. 475, 49 P. (2d) 1136. The circuit court, upon receipt of the mandate, entered an order November 27, 1935, appointing the appellant executor of the deceased's estate. September 4, 1935, Callan filed his final report as administrator, and on October 7, 1935, it was approved. A supplemental final report, filed October 8, 1935, was approved on the same day. After Callan had been discharged as administrator he was, without the knowledge of the appellant, "erroneously appointed by the Circuit Court of Multnomah County, trustee, claiming the same to be under the Last Will and Testament of Harper Workman, deceased. Thereafter said A. C. Callan, trustee, commenced a suit in the Circuit Court of Multnomah County, Oregon, to remove a cloud from the title and to set aside a deed held by the Western Investment and Holding Company". The concern just named does not claim to be the owner of the property involved

in that suit, but holds the title in trust. "This matter was not closed, or attempted to be closed by the said administrator. The real estate with the legal title in the Western Investment and Holding Company aforesaid, was inventoried by the administrator and appraised at $7,000.00, * * *. The said matter should have been closed through said estate. In order to defeat and circumvent the decision of the Supreme Court, the attempt to close said estate was made as alleged and said matter was not included or disposed of therein. In a further attempt to defeat and circumvent the decision of the Supreme Court, and in connection with the said final report and supplemental final report, and the approval thereof, the trustee under the will was petitioned for and obtained as alleged. The court appointed A. C. Callan trustee, notwithstanding the provisions of the will expressly provides that this executor H. J. Carruthers shall and is instructed to make payment to certain legatees for a period of ten years. With this executor fully appointed and qualified and under approved bond of $8,000.00 the probate court has refused by order to either permit this executor to bring suit upon and against the Western Investment and Holding Company for settlement of said trust or accounting therein, or to authorize said executor to petition the circuit court to intervene in said cause or to collect rents under the lease of said property. * * *"
The appellant has demanded payment to him of all rentals payable by the tenant who occupies the property just mentioned, but has received only one month's rent amounting to $38.83. All other payments have been made to Callan. The appellant "has made written demands on A. C. Callan, trustee, to account for the assets of the estate in his hands, to turn over all papers, documents and property to your executor," but Callan

refused to do so, claiming that the estate has been fully settled. Prior to Workman's death he and one Smith Wanamaker, as partners, were the owners of mining property in Alaska which the two operated. The estate's appraisal placed a value of $1 upon it. Prior to his death the decedent, claiming that Wanamaker had embezzled $14,000 of the mine's profits, employed W. E. Richardson, an attorney of Portland, Cecil Clegg and C. S. Collins, attorneys of Fairbanks, Alaska, "to act for him as his attorneys in the matter of such litigation as might grow out of said affair". Decedent, in order to finance "said contemplated litigation or settlement thereof," conveyed to the Western Investment and Holding Company, as trustee, the aforementioned real property, and then an $800 mortgage was executed which named Nellie Lister mortgagee. Funds derived from the mortgage were delivered to Workman, who proceeded to Alaska. While there he became ill, returned to Portland, and shortly died. The $800 mortgage has not been paid. Collins filed a claim for $150 with the appellant, and a claim for a similar amount filed by Clegg with Callan was rejected, but "both said claims are approved and allowed by your executor. * * * The claim of embezzlement of the $14,000.00 by the partner of Harper Workman referred to was investigated by the U. S. income tax collector in the matter of the income taxes of Harper Workman and Smith Wanamaker." Because of this investigation Workman employed an accountant whose "claim is $150.00 * * * and should be allowed and paid". In the aforementioned appeal to this court costs and disbursements amounting to $98 were assessed "against A. C. Callan, administrator with the will annexed" but they have not been paid. "No adjudication or settlement has been made in regard to inheritance or

income taxes. The administrator not only had the valuable mining property mentioned appraised at $1.00, but failed to list certain other valuable mining claims owned by Harper Workman in Alaska. Properly inventoried and appraised the amount of the estate is over $25,000.00. The State is an interested party and a considerable amount of the estate is subject to State inheritance taxes." The appellant is conducting an investigation concerning the merits of the $14,000 claim and the value of the Alaska properties. The $8,000 bond required of the appellant is excessive and should be reduced to $250. The prayer which concludes the petition asks that orders be entered holding that (1) all things done by Callan are null and void; (2) all orders made by the court pertaining to Callan "particularly the orders approving the final report and supplemental final report, discharging the administrator, exonerating his bond" be cancelled; (3) the appellant be authorized to intervene in the aforementioned suit which Callan as trustee instituted against the Western Investment and Holding Company; (4) the appellant be authorized to institute proceedings against Callan for the possession of all documents "or any written information belonging to the said estate and particularly in re the mining property in Alaska and to commence and litigate an action against the said A. C. Callan as trustee for the rents collected for the property * * * and also against the lessee for past and future rents and also against the Western Investment and Holding Company for rents collected and to enjoin it and A. C. Callan, trustee, from further collections;" (5) the appellant be authorized to continue his investigation concerning the Alaska mining property and the contemplated litigation pertaining thereto; (6) the appellant "be authorized and instructed to

take up both the inheritance tax and income tax matters * * * with the proper authorities so that clearance of probable claims may be properly disposed of;'' (7) appellant's bond be reduced to $250; (8) the filing of an inventory and appraisement be postponed for six months; (9) since the appellant had no express knowledge of the proceedings concerning Callan's final reports and the orders based thereon, his failure to contest the same be deemed excusable neglect; (10) the court cancel its order overruling appellant's petition filed September 7, 1936; and (11) ''the court find and order that all the real property belonging to the estate was not inventoried and appraised by the administrator; that property was appraised without proper investigation and proper determination of value; that there are claimants against said estate who are unpaid and who should be paid from the assets of the estate; that the affairs of said estate were not closed as stated in the final report and supplemental final report, and that the executor should be and is permitted to probate said estate''.

Accompanying this petition is an affidavit of W. E. Richardson, one of the appellant's attorneys, in which he states: ''The following bills were due and should have been paid before the estate was closed, Mortgage due Nellie Lister for $800.00, E. B. Collins attorney Fairbanks, Alaska, Frank Smith an Accountant, Portland, Oregon, Cecil Glegg an attorney at Fairbanks, Alaska, $150.00, Costs allowed in the Supreme Court $98.00. That the claim of Earle Workman was allowed by the Court. That said claim was not due him and he is indebted to the estate. That Mr. Harper Workman told me that he had employed Mr. Collins and Mr. Glegg. That I received and held the Claim of E. B. Collins from

June 1935 until I filed it with Mr. Carruthers as Executor of said estate." No supporting data or information accompanies the above statements.

The material parts of the will are:

"Second. I give and bequeath unto Henry Workman the sum of Twenty-five Hundred Dollars.

"Third. I give and bequeath unto Murna Cobb the sum of Five Hundred Dollars.

"Fourth. I give and bequeath unto Pauline Beeks the sum of $25.00 per month to be used for her education in the Public Schools and an additional sum of $25.00 per month during the time she is attending a University or Business College. This is also be given her during the vacations that she is attending school. And also the sum of $500.00 when she is 21 years of age.

"Fifth. I give, devise and bequeath unto my wife, Laura Workman the sum of $25.00 per month during her life, also  *  *  *

"Sixth. I give and bequeath unto Earl C. Workman my service station located at E. 68th and E. Glisan St., Portland, Oregon,  *  *  *  on the following terms and condition that he pay my executor for a term of ten years the sum of $50.00 per month  *  *  *.

"Seventh. I give and bequeath the remainder and residue of my estate to  *  *  *  and I direct that the residue property be not turned over to said parties till 10 years after my death.  *  *  *

"And Lastly, I nominate, constitute and appoint H. J. Carruthers to be executor of this, my Last Will *  *  *."

The inventory and appraisement of the deceased's estate shows a value of $10,477.83. Two lots in Portland improved with the filling station mentioned in Paragraph 6 of the will were deemed worth $3,000, and the equipment was appraised as worth $750. The claim mentioned in the petition concerning an embez-

zlement of mining profits by the deceased's former partner was appraised as worth $1. Concerning it, the appraisement states: "Claim against H. S. Wanamaker arising out of partnership—arising out of claim near Fairbanks, Alaska, arising out of settlement of each year's clean-up, of doubtful value as all settlement had been made up to the time of death."

■ The record indicates all of the following: After Callan had been appointed administrator he published notice to creditors, as required by law, and filed an inventory. Later an appraisement was filed. Various claims were presented by creditors of the estate, and the administrator collected moneys owing to the estate. September 4, 1935, Callan filed his final account. On the same day the court made an order fixing the time for hearing objections and Callan published notices concerning that matter, as required by law. No objections were filed, and on the appointed day (October 7, 1936), after the account had been considered by the court, an order was entered approving the same and ordering disbursement of the estate. September 5, 1935, Elizabeth A. Cobb, Earl C. Workman, Florence I. Clark and Ada A. Beeks, who are four of the beneficiaries named in the will, instituted a suit against Murna Cobb Hurari, Laura Workman, A. C. Callan, administrator, and Laura Workman, guardian ad litem of Pauline Beeks, a minor, wherein the plaintiffs prayed that a trustee be appointed to carry out the trust imposed by the will and to receive the assets of the estate from the administrator. The individuals just named constitute all of the heirs of the deceased and all of the beneficiaries of the will except Henry Workman who had assigned his interest in the estate to the aforementioned Elizabeth A. Cobb. Proper service of summons and com-

plaint was made, and on the 4th day of October, 1935, the court entered an order appointing A. C. Callan as trustee to carry out the trust imposed by the will, who thereafter qualified by posting a bond as required by the court. October 7, 1935, Callan, as administrator, "filed his supplemental account fully accounting for all moneys received and disbursements made between the time of the filing of the final account and the entry of the order of disbursement". On that day the probate judge entered a "decree upon final account" which states:

"Said account is in all respects true and correct, and the same is supported by proper vouchers. * * * By the terms of the sixth paragraph of the Last Will and Testament of Harper Workman, deceased, there was devised unto Earle C. Workman the service station located at East 68th and Glisan Street in the city of Portland, said property, being otherwise described as * * * subject to the conditions that Earle C. Workman pay to the estate the sum of $50.00 per month for a period of ten years; that Earle C. Workman has refused to accept said property upon the conditions named;

"7. That a trust is imposed by the terms of the Last Will and Testament of Harper Workman, deceased, and the Circuit Court of the State of Oregon for the County of Multnomah has appointed A. C. Callan as trustee to accept the assets of the estate of Harper Workman, deceased, for the purpose of carrying out the provisions of said Last Will and Testament.

"It is, therefore, ordered, adjudged and decreed that the final account of said administrator be and the same is hereby finally settled, allowed and approved * * *

"It is further ordered, adjudged and decreed that the residue of the estate, after deducting the cost of the publication of notice of hearing on the final account; that is, the following property: * * * together

with any other money or property coming into the hands of the administrator since the filing of his final account, and any other property not now known of, and which belongs to said estate or which the estate may have an interest in, be and the same is hereby ordered to be disbursed by the payment or delivery of the same unto A. C. Callan, as trustee, under appointment by order of the Circuit Court   *   *   *.''

October 8, 1935, the court entered an order closing the estate which states:

''It appearing that the estate has been fully administered, and that satisfactory vouchers or receipts have been filed evidencing the proper payment of such funds as have been disbursed, and that receipts or releases have been filed evidencing the proper disbursement of the balance of the estate to the beneficiaries specified in the Last Will and Testament of Harper Workman, deceased, and the trustee appointed by the Circuit Court of the State of Oregon for the County of Multnomah to carry out the trust imposed by said Last Will and Testament, and there being nothing further to be done in the administration of said estate, it is ordered, adjudged and decreed that A. C. Callan, the Administrator of the Estate of Harper Workman, deceased, with the Will Annexed, be and he hereby is discharged from all liability on account of his administration in said estate, and his bondsman is hereby exonerated, and said estate is hereby closed.''

The appellant seems to be laboring under mistaken impressions concerning some of the transactions handled by Callan. For instance, the affidavit of Mr. Richardson, from which we have quoted, states that the claim of E. C. Workman should not have been allowed. The order of the probate judge allowing it recites that the claim had been rejected by the administrator, but that after a hearing, during the course of which witnesses testified, the rejection was overruled and the

claim was allowed. The amount involved is $635.80. The administrator's final report states:

"The claim presented by E. C. Workman and allowed by the court in the amount of $635.80 is yet unpaid. However, the said E. C. Workman has expressed a willingness to release the estate from payment of the said claim, he having made satisfactory arrangements with the other heirs for the payment thereof."

The claim was not paid. Concerning the claim of Cecil H. Clegg, which the appellant states should have been allowed, the probate record states:

"Claim of Cecil H. Clegg in the amount of $125.00 was presented to the administrator on the 16th day of April, 1935. The claim was for legal services rendered Harper Workman on August 26, 1934. The administrator was unable to find anything among the papers of Harper Workman indicating that a claim of this nature had ever been made to Harper Workman during his lifetime and was unable to find any other evidence indicating this indebtedness; therefore, claim was rejected by the administrator on the 15th day of August, 1935, and the same has been filed with the clerk of this court."

The record does not indicate that Clegg offered any objection when the claim was rejected. It will be recalled that the petition and also Mr. Richardson's affidavit states that Clegg's claim should be and has been allowed by the appellant in the sum of $150. The claim is in the files; we have examined it; it is for $125. The petition also states that the administrator's final account should not have been approved and he should not have been discharged until the claim of Nellie Lister, in the sum of $800, had been paid. While we have carefully searched the probate files, we have found no such claim. It will be recalled that the petition states that Workman conveyed an item of real property to the

Western Investment and Holding Company, and that then a mortgage of $800 describing this property was executed and delivered to Nellie Lister. We assume that this is the claim to which the petition refers. But it will also be recalled that Callan, as trustee, has instituted a suit to cancel this conveyance and mortgage as clouds upon the title of the trustee estate. In other words, no such claim has been filed and the purported claim is being attacked in the circuit court. If Mrs. Lister desired to charge the estate with the amount of her note—assuming that she possessed one—she should have filed a claim with the estate's representative. See *Scheafer v. Sellar et al.* ante p. 16 decided February 16, 1937. It will also be recalled that the petition states that C. S. Collins and an accountant each possess claims in the sum of $150 and that these claims should be paid. We have searched the probate files and have found no such claims nor any indication that these individuals are entitled to receive anything from the estate. The petition also indicates that sums are due on account of income and inheritance tax matters. No such claims nor any intimation of them can be found in the probate files. It will also be recalled that the petition on review avers that the filling station property was appraised as worth $7,000. As already indicated, the appraisers deemed the lots worth $3,000 and the equipment upon them as worth $750.

Appellant's brief, in referring to Callan's final report, states: "Appellants are not objecting to the report as such, but to the authority to make it." This statement was apparently prompted by the following observation contained in the respondents' brief: "No creditor is here complaining because every claim presented within statutory time and dully allowed has

been duly paid.'' It will thus be seen that the appellant does not challenge Callan's good faith, but contends that since he, and not Callan, should have been appointed to administer the estate, all of Callan's acts, as well as all orders concerning them and him made by the probate department, were nullities. This interpretation of the petition is borne out by the appellant's brief, especially the following paragraph taken from it:

"This case presents a very unusual and unique situation. A situation where the record shows that an estate is not only probated twice, but by two different and distinct officers, viz., an administrator with the will annexed, and an executor appointed under the provisions of the will."

In other words, the appellant apparently desires to duplicate every act that Callan did, thereby probating the estate twice. Appellant's brief concedes that all of the heirs of the deceased and all of the beneficiaries of the will are opposed to the course in which he proposes to engage and for which he seeks authority.

No one contends that the appointment of Callan was the result of improper motives. The circumstances which apparently influenced the probate judge to refrain from appointing the appellant and to appoint Callan are mentioned in *In re Workman's Estate,* supra. The failure to appoint the appellant was the result of a mistaken belief that the power of making appointment was within the discretion of the probate judge. No one contends that Callan was prompted in the discharge of his duties by any purpose except a desire to do his duty. The inventory, published notices, claims filed, claims paid, receipts signed by claimants, accounts filed, etc., are before us as a part of the record and an examination of them indicates that Callan performed his duties in a businesslike manner. He made

full report of every transaction in which he engaged and accompanied his reports with the supporting data.

The problem, therefore, which the appeal, based as it is upon the order denying the two petitions, places before us is whether Callan's acts and the court's orders authorizing them were mere nullities. The respondents, who are Callan and two of the beneficiaries of the will, concede that the appellant is now executor, and admit that he possesses authority to audit Callan's accounts and complete anything that Callan may have left unfinished. The appellant advances two propositions: (a) Since he, and not Callan, should have been appointed the estate's representative, no validity attached to anything which Callan did, and all orders pertaining to the latter were void; and (b) the appeal from the order which refused to appoint the appellant executor, and which appointed Callan, by its own force stayed all proceedings in the probate court pending the appeal, and, therefore, all acts performed by Callan, after the notice of appeal was given, were nullities. We shall consider the latter contention first.

The appellant concedes that he filed no supersedeas bond at the time of his appeal from the order which appointed Callan. If his appeal stayed proceedings in the probate court pending the appeal, then during the 13 months consumed by the appeal the estate lacked a representative to collect rents, interest, accounts, etc., and likewise lacked a representative to pay taxes, expenses of last illness, funeral service, etc. Further, an allowance could not have been paid to the widow had she applied for such relief, nor could the monthly payments of $25 have been made to the widow and grandchild, however pressing their needs. A special administrator could not have been appointed

pending the appeal because § 11-214, Oregon Code 1930, authorizes such appointments only "when for any reason there shall be delay in issuing letters testamentary or of administration." In the present instance there was no delay. In § 1735, Schouler on Wills, a special administrator is defined as "a representative of a decedent appointed to care for and preserve his estate till an executor or general administrator is appointed." Obviously, the court could not have appointed a special administrator after it had already issued letters to Callan. *In re Cavanaugh's Will*, 72 Misc. Rep. 584, (131 N. Y. S. 982), and *In re Leland's Will*, 175 App. Div. 58 (161 N. Y. S. 320), which, it is contended, authorize the appointment of a special administrator pending the appeal, do not support that contention. The New York statute concerning the appointment of special administrators is substantially different from ours, and in both of those instances no letters were outstanding when the special administrator was appointed.

Since the appellant filed no supersedeas bond, the proceedings were not stayed unless the provisions of §§ 7-504 and 7-505 stayed them. The first of these two sections of our laws provides that the appellant's undertaking on appeal "does not stay the proceedings, unless the undertaking further provides to the effect following:

1. If the judgment or decree appealed from be for the recovery of money, or of personal property, or the value thereof, * * *

2. If the judgment or decree appealed from be for the recovery of the possession of real property, for a partition thereof, or the foreclosure of a lien thereon, * * *

3. If the decree appealed from require the transfer or delivery of any personal property, * * *

4. When the decree appealed from is for the foreclosure of a lien and also against the person for the amount of the debt secured thereby  * * *

When the decree appealed from requires the execution of a conveyance or other instrument,  * * *''

Each of the above subdivisions is followed by a specification of the terms of the undertaking necessary to operate as a supersedeas. Section 7-505 provides:

''* * * The court or judge thereof, in its discretion, may dispense with or limit the further undertaking required by subdivisions 1, 2, 3 and 4 of section 7-504, when the appellant is an executor, administrator, trustee, or other person acting in another's right. In cases not provided for in such subdivisions, when an appeal is perfected, with an undertaking for the appeal only, proceedings shall be stayed as if the further undertaking thereof had been given.''

In seeking a solution of the problem before us it is virtually useless to consider the decisions of other states because the problem is one of statutory construction and we know of no decision construing a statute like ours.

The order from which the appellant appealed is two-fold: (1) It rejected his petition to be appointed executor; and (2) it appointed Callan administrator with will annexed.

The appeal from the part of the order which refused to appoint the appellant stayed nothing because that part of the order was self-executing and required no affirmative action. However, this court possesses inherent power, as do all appellate courts, to issue orders of supersedeas for the preservation of the subject matter of the appeal, thereby avoiding the imposition of irreparable damage upon the parties; and it may exercise this power even though the appeal is taken

from a self-executing judgment or decree: *Helms, Groover & Dubber Co. v. Copenhagen*, 93 Or. 410 (177 P. 935); *Livesley v. Krebs Hop Co.*, 57 Or. 352 (97 P. 718, 107 P. 460, 112 P. 1); 3 Am. Jur., Appeal and Error, p. 196, § 538. See also *Spring v. South Carolina Insurance Co.*, 6 Wheaton 519 (5 L. Ed. 320). As the two decisions from this court just cited point out, this same power is possessed also by the court from which the appeal was taken; provided that court had the power to issue restraining orders. Hence, pending the appeal from the order which rejected the appellant's petition for appointment, this court could have issued a restraining order or could have exacted an undertaking had either been necessary to preserve the estate. Again, the interest of the estate can be safeguarded by a supersedeas bond whenever the estate's representative is required to part with the possession of property, and appeals. An instance of that kind is, *State ex rel. Huber v. Tazwell*, 132 Or. 122 (283 P. 745). In that case an order had been entered revoking the authority of the executrix and requiring her to deliver the personal property of the estate of which she had taken possession to a third party. Our decision held that she was entitled to file a supersedeas bond. It will be observed that the order affected the possession of property.

We shall now consider the effect of the appellant's appeal from the order which appointed Callan. If an appeal by a would-be representative stays all proceedings pending the appeal upon the filing of a mere undertaking to pay costs, the estate has no recourse against anyone in the event the probate court's appointee is ratified on appeal, even though the estate is subjected to great loss during the unsuccessful appeal. In the present instance, the appellant had no financial interest

in the estate. He is not one of the beneficiaries named in the will. When he announced his purpose to appeal, the estate owed him nothing for up to that time he had rendered it no service. His right to be appointed executor was not derived through his own deserts, but because the decedent possessed the right to nominate an executor and because the courts, through the nominee, give effect to that right. The purpose is to administer the estate in accordance with the deceased's wish. An estate can suffer no loss if the appointee proceeds with the administration pending the appeal. He is required to file a very substantial undertaking for the estate's protection. The appointee is a fiduciary and as such is always subject to the orders and supervision of the probate court. The estate is in *custodia legis* and the representative is bound to pursue the course directed by law. If upon appeal the order appointing him is held erroneous, the executor named in the will, upon being appointed, can require the administrator to file an accounting. If it should develop that he has been guilty of any unwarranted conduct, he and his sureties are liable to the estate. Moreover, as we have already seen, this court possesses power to issue orders of supersedeas and to demand undertakings in the event that it should develop that the appointee, pending the appeal, is about to engage upon a course of conduct which will injuriously affect the subject matter of the appeal.

It is clear that the appellant's appeal did not vacate Callan's appointment. The greatest possible effect which an appeal from such an order can have is to suspend the appointee's authority pending the appeal. Proceedings for the administration of the estates of decedents are *in rem*. Such being their nature, it is clear that an appeal from merely one of the numerous

orders, as, for instance, an appeal from an order appointing an administrator, does not transfer the estate to this court and authorize us to make orders concerning its administration. The estate remains in the probate department of the lower court.

We now revert to the provisions of the two sections of our code under consideration. Nothing in those two sections, which were a part of Laws of 1862, indicates a purpose that a mere cost bond shall stay proceedings in cases not affecting money, property or the execution of a conveyance unless it be the last sentence of § 7-505. But the enacting clause of this statute, in our opinion, is found in the first sentence of § 7-504. That section, after referring to an ordinary cost bond, provides: "Such undertaking does not stay the proceedings." Manifestly, the purpose of the enactment was to abrogate the old common law rule whereby judgments and decrees were superseded by an appeal. This section next enumerates the above-mentioned instances pertaining to decrees and judgments in regard to money, property and the execution of conveyances. In those cases the proceedings are stayed. Then follows § 7-505 which, after providing that perishable goods may be sold pending an appeal, and that courts may dispense with supersedeas bonds if the appellant is an executor or other fiduciary, concludes with the sentence upon which the appellant relies. It will be observed that the sentence just mentioned follows an enumeration of provisions all of which pertain to judgments and decrees for money, property or the execution of conveyances, and that even the last sentence employs the term "as if the further undertaking thereof had been given"; thus indicating that the legislature was still thinking about cases in which a supersedeas bond could be written. It is our belief that this final clause is a

part of the exception concerning judgments for money, property and the execution of conveyances, and that its purpose is to stay all judgments and decrees of the kind expressly mentioned in § 7-504 without the necessity of filing a further undertaking. If this is not the correct interpretation, then, strangely enough, the last sentence of § 7-505 is the enacting clause of the statute, and in that event we must construe this act by inverting its context. Thus, we would be required to start with the last sentence and make the act read that an ordinary cost bond stays all proceedings except those specifically mentioned in § 7-504. In that event the first sentence of § 7-504 which reads: "Such undertaking (that is, an ordinary cost bond) does not stay the proceedings" will be deleted by judicial construction. If we should accept this interpretation we should ignore the very purpose of the act which was to end the old common-law rule that an appeal, by its own essence, superseded the judgment or decree. The statute, being remedial in character, should be liberally construed to accomplish the legislative purpose. We do not believe that the legislature by this enactment intended to stay all proceedings in the numerous cases where the relief sought does not consist of money, property or the execution of a conveyance; thereby depriving both the lower court and this court of power to issue injunctions and demand undertakings for the preservation of the subject matter of the appeal. Courts generally construe exceptions strictly and since, in our belief, § 7-505 is an elaboration upon the exceptions specifically mentioned in § 7-504, we place the above interpretation upon it. It follows that the appellant's appeal did not stay the order appointing Callan. In arriving at this conclusion, we have not overlooked the following authorities cited by the appellant: 3 C. J., p. 1252, § 1366; 4 C. J., p. 1209,

§ 3257, and p. 1210, § 3261; *O. R. & N. Co. v. Hertzberg,* 26 Or. 216 (37 P. 1019); *State ex rel. v. Gates,* 143 Mo. 63 (44 S. W. 739). We do not believe that these authorities support his contentions. Under the circumstances, it was the duty of Callan to proceed with the administration of the estate: *In re Levy's Estate,* 125 Wash. 240 (215 P. 811); *Dutcher v. Culver,* 23 Minn. 415, and *Hughes v. Hodges,* 94 N. C. 56.

We come now to a consideration of the appellant's contention that, since the letters should have been issued to him, and not to Callan, the order directing the issuance of the letters was void and all things done by Callan were invalid.

Section 28-1003, Oregon Code 1930, confers upon county courts general probate powers, including the power to take proof of wills and to grant, as well as to revoke, letters of administration. Sections 28-835 to 28-839, inclusive, which affect only Multnomah county, abolish the office of county judge and transfer the authority possessed by that office to a special department of the circuit court known as the department of probate. The appellant does not deny that the department of probate of the circuit court of Multnomah county has general probate powers, including the power to appoint executors, administrators, and administrators with will annexed. See also § 11-206, Oregon Code 1930. Therefore, since the probate court possessed ample power to appoint a representative of the deceased's estate, appellant's contention resolves itself into a proposition that when the probate judge appointed the wrong man, the order making the appointment was a nullity and all things done under it lacked legal effect. Manifestly, the jurisdiction of the court to make the appointment depended, not on the selection

of the proper person but on the authority of the court to appoint a personal representative of the estate: *Broughton v. Bradley,* 34 Ala. 694 (73 Am. Dec. 474).

From an extensive annotation following the report of *Belton v. Summer,* 31 Fla. 139 (12 So. 371, 21 L. R. A. 146) at page 151, we quote:

"The distinction between the acts of a court having jurisdiction over the subject-matter under some circumstances, and those of one which, in no possible state of things, can take jurisdiction over the subject, is a sound and sufficiently intelligible one. If under any circumstances the court could grant administration to the administrator, it had jurisdiction of the subject, and must judge of those circumstances. If it erred in determining that the facts upon which its power to grant administration in the particular case depended, were sufficiently proved, it was an error to be corrected by some competent authority, but until so corrected it conferred upon such administrator all the powers of a rightful administrator. See opinion of Parker, J., in Fisher v. Bassett, 9 Leigh, 119, 33 Am. Dec. 227."

Since, therefore, the court had the power to make the appointment but chose the wrong individual, the question which now confronts us is whether Callan's acts were nullities or whether they possessed the same validity as if the appellant had himself performed them. From Schouler on Wills, Executors and Administrators (6th ed.), § 2253, we quote:

"The rule to be favored at the present day is, that all acts done by a representative in the due and legal course of administration are valid and binding on all interested, even though the letters issued by the court be afterwards revoked or the incumbent discharged from his trust."

From 23 C. J., Executors and Administrators, p. 1083, § 242, we quote:

"* * * an administrator appointed and qualified by a court of competent authority is the lawful

representative of the personal estate until his appointment is rescinded, although another had the better right to be the administrator. * * *''

and from p. 1085, § 246, we quote:

''As a general rule, all acts by an executor or administrator done in the due and legal course of administration are valid and binding, even though the appointment is voidable and the letters issued by the court are afterward revoked or the incumbent discharged from his trust, and he will be protected in all lawful and bona fide acts done before revocation of his letters. If, on the other hand, the grant is absolutely void, the general rule * * *.''

From 11 R. C. L., Executors and Administrators, p. 101, § 102, we quote:

''At one time the rule seems to have been firmly established that if the administration was granted on the supposition that no will existed, and it subsequently developed that there was a will, all the proceedings under the administration were void and could be assailed collaterally. And this was true whether the will was suppressed or its existence was unknown, or it was doubtful who was executor, or he was concealed or abroad at the time administration was granted. Now, however, the rule seems to be firmly established to the contrary. So, in nearly all jurisdictions where letters testamentary or of administration have been revoked or vacated as having been improvidently granted, the acts of the executor or the administrator, done in good faith, are valid. They are binding upon the estate * * *.''

From an extensive annotation in 1917B Ann. Cas. p. 1131, we quote:

''Letters of administration, issued by the probate court having jurisdiction of the subject-matter, on proper representations made, must be regarded as a protection to the administrator in a contest between him and the executor of a will offered for probate and

rejected prior to his appointment, and which is subsequently and after protracted litigation admitted to probate, as to the bona fides of the acts of the administrator in the discharge of his duties under his letters."

In Williams on Wills (12th ed.), p. 402, the text states that in England prior to 1914 the revocation of letters of administration rendered void ab initio all intermediate acts of the former executor or administrator except his payment of valid debts, but that *Hewson v. Shelley*, 2 Ch. 13, Ann. Cas. 1917B, 1119, decided in 1914 by the Court of Appeals, has established a rule that all of his acts are valid until the order appointing him is revoked. In *Hewson v. Shelley* the facts were that after the decedent's death a diligent, but unsuccessful search for a will was made. Then letters of administration were granted to his widow. Exercising the power conferred by the Land Transfer Act, she, as administratrix, sold some of the estate's real property. Still later, but before having completed the administration, she died. After her death the decedent's will was found. It bequeathed the conveyed property to the widow for life and after her death to the plaintiff. It nominated the plaintiff as executor. The court held that, notwithstanding these circumstances, the conveyance made by the administratrix was valid.

In *Rice v. Tilton*, 14 Wyo. 101 (82 P. 577), it appeared that the respondent, on November 30, 1901, was appointed administrator with the will annexed in Wyoming of the estate of Chauncey B. Tilton, deceased, who had died a resident of Massachusetts, but leaving an estate in Wyoming. The appellants were the executors named in the will and had been appointed as such in Massachusetts where the will was first pro-

bated. A Wyoming statute required that notice of ancillary proceedings must be published and that notice must be sent to the executors first appointed. This statute was violated in the proceedings whereby the plaintiff gained his appointment. Because of this his appointment was revoked April 4, 1903. He then filed a complete and truthful report of his transactions as administrator with the will annexed. The appellants filed exceptions to it, challenging the respondent's right to receive credit for his disbursements and his right to have compensation awarded him for his services. In affirming the decree of the lower court, which approved the report and awarded compensation, the supreme court of Wyoming said:

"We think the order [appointing the respondent] was not void, but merely voidable. * * * The order was, therefore, to all intents and purposes, until set aside, as valid and binding upon all persons as though there had been no irregularity in the matter of notice. This conclusion is in accord with authority upon the subject. * * * The appointment of defendant in error, under the order of November 30, 1901, must, therefore, be treated as valid until it was annulled in the proceeding brought for that purpose; and the administrator, having apparently acted in good faith, will be entitled to credit for his reasonable disbursements and commissions, so far as the same are allowable by law to an executor or administrator with the will annexed."

*Meek v. Allison*, 67 Ill. 46, was a proceeding by the executor named in the will to gain an accounting from an administrator who had been appointed before the validity of the will had been established. The facts were: After one Daniel Allison had died an instrument which purported to be his will was offered for probate. It was rejected. In July, 1864, Isaac M. Allison was

appointed administrator. Fifteen months later the executor named in the rejected will offered it again and, in 1868, after protracted litigation it was admitted to probate. The court held that the acts performed by Isaac Allison, the administrator, were not void. We quote from the decision:

"The letters issued to Isaac M. Allison were not void—only voidable. This is not a direct proceeding to test the validity of the letters, but the acts of the administrator are collaterally questioned. The probate court had jurisdiction of the subject-matter, and upon proper representations having been made, full authority to issue the letters. They must, under such circumstances, be regarded as a protection to the administrator. * * * When a petition was presented and all the facts required by the statute recited therein the court obtained jurisdiction to issue letters. The administrator was, then, at least an officer de facto, and appointed to perform certain specified duties. It was his duty to administer the estate according to law, to pay debts and to make distribution of the remainder of the assets in his hands to the heirs. He was liable upon his bond for the nonperformance of the duties imposed upon him. It is alike unreasonable and in violation of every principle of right and justice to hold him liable for acts which were in compliance with the law."

To like effect see *Crocker v. Crocker*, 198 Mass. 401 (84 N. E. 476) ; *Barkaloo's Adm. v. Emerick*, 18 Ohio 268; *Foster v. Brown*, 1 Bailey's Law 221 (19 Am. Dec. 672) ; and *Bigelow's Executor v. Bigelow's Administrators*, 4 Ohio 138 (19 Am. Dec. 591) ; *Re Pingree*, 82 Utah 437 (25 P. (2d) 937, 90 A. L. R. 96).

*Brown v. Brown*, 7 Or. 285, the facts were that two individuals, named in the will of one Olney, as executors, were appointed to that office by the proper court upon Olney's death. Later they were removed when a decree was entered holding that the will was invalid.

In the meantime, a sale of some of the estate's real property was made by the executors. Upon appeal, the validity of the will was sustained, but the heirs attacked the conveyance upon the ground that the order declaring the will void nullified the sale. In disposing of this contention, the decision stated:

"We hold the law to be otherwise. The probate court had exclusive jurisdiction of the subject-matter in regard to the probate of what purported to be the will of Cyrus Olney. It was duly proved to be his will before that court, and letters testamentary were issued thereon, and until these proceedings were annulled the validity of the will could not be collaterally drawn in question by anyone nor by any other court. Administration of the estate under it could be conducted and enforced, as under any other will duly proved. Such being the case, all acts done in the due course of administration, while the will remained unannulled, and the letters testamentary were unrevoked, must be held entirely valid."

In *Ramp v. McDaniel*, 12 Or. 108 (6 P. 456), the facts were that the deceased's will nominated his widow executrix, and, upon the probating of the will, letters were issued to her, but she neither qualified nor declined the appointment. Later one Lewis Johnson was appointed administrator, and qualified. Six days later he tendered an insufficient resignation which the court attempted to accept without entering an order. At the same time the court appointed the widow and one Joshua McDaniel joint representatives of the estate. The widow filed a written renunciation. McDaniel was not related to the decedent by consanguinity and was not a creditor of the estate. The estate was insolvent and appellants were among its largest creditors. They sought to have McDaniel removed and have a creditor appointed administrator. The decision of this court

held that McDaniel's appointment was erroneous, but that the error rendered the appointment voidable, but not void. We quote:

"The county court has exclusive jurisdiction in the first instance to grant and revoke letters testamentary and of administration (Code, § 869), and granting administration out of the order provided in section 1053 of the Code would be erroneous, but not a nullity. * * * The respondents are legal administrators of the said estate, and their acts in administering upon it are as valid as though the appointment of them had been regular in the first instance."

In *In re Estate of MacMullen*, 117 Or. 505 (243 P. 89, 244 P. 664), the deceased's daughter Vivian was his sole heir if the circumstance of her having been adopted into the family of another had not deprived her of her status as the deceased's heir. Under these circumstances, one S. H. Labbe petitioned for letters of administration without notice to Vivian. Later, Vivian filed a petition asking for the removal of Labbe and for her own appointment as administratrix. She claimed that Labbe was not entitled to the appointment which he had gained. Labbe resisted Vivian's petition upon the ground that when she had been adopted she ceased to be the decedent's heir. Her petition was allowed. Labbe's attorneys then filed a claim for compensation for their services in resisting Vivian's petition, which was allowed. In reversing the order allowing the claim, the decision of this court said:

"It was error to grant the petition of Labbe for his appointment as administrator. His appointment was not void but voidable. Ramp v. McDaniel, 12 Or. 108, 115 (6 P. 456); In re Owen's Estate, 32 Utah 469 (91 P. 283, 285). Attorneys' fees for services rendered in connection with a partial administration of an estate by an administrator acting under an erroneous or a

voidable appointment are chargeable against the estate as a necessary expense, if they were rendered in preserving or caring for the property of the estate, and were a benefit to the estate.''

See also to the same effect *State v. Henkle*, 45 Or. 430 (78 P. 325).

The appellant cites 4 C. J., pp. 1204-1209, §§ 3249-3256; 42 C. J. p. 558, § 274; *Tustin v. Gaunt*, 4 Or. 305; *Oh Chow v. Brockway*, 21 Or. 440 (28 P. 384); *Deering v. Quivey*, 26 Or. 556 (38 P. 710); *Kamp v. Kamp*, 59 N. Y. 212. We have examined all of these authorities, but do not believe that, so far as they bear upon the problem before us, they are in any way in conflict with the authorities reviewed in the preceding paragraphs.

From the foregoing treatises and decisions it is evident that the mere facts that error was committed in making the appointment and the appointment was later revoked does not deny validity to the administration which the appointee gave to the estate while his authority remained unrevoked, provided he conducted himself honestly and the court had power to make the appointment. Under such circumstances, his collections, sales and disbursements are valid, and his letters of appointment afford him complete protection. The same validity attends the conduct of the erroneously appointed administrator as if the office had been occupied by the proper individual. He is chargeable with all sums which he received and entitled to credit for all sums which he disbursed pursuant to court orders. In these respects he is treated no differently than if his appointment had been free from error. If the representative pursued the course outlined by law, and was guilty of no bad faith, he is as fully protected

by the order which appointed him as if his appointment had been free from irregularity. The notices which he publishes and the claims which he rejects are as binding upon all persons as if those acts were done by a properly selected representative. His successor can no more ignore such acts than he could his own.

We shall now apply these principles to the facts before us. The verity of Callan's account is not challenged. It is not contended that he paid any illegal claim except the claim of E. C. Workman, and, concerning that claim, the appellant is mistaken. Likewise, the record indicates that all claims that were filed and allowed by the probate court have been paid. Callan disbursed the balance available for distribution as directed by the order of the probate court. The record so shows and the decree approving his final action and discharging him from his trust expressly so states. Before these acts were performed notices were published, the sufficiency of which the appellant does not challenge. It is apparent from the principles above stated that the same legality is attached to Callan's acts as though Carruthers, the appellant, had performed them himself. In other words, no clamiant is entitled to payment a second time merely because the first payment was made by Callan instead of by Carruthers. No debtor of the estate who paid Callan can be forced to pay again by the appellant. Likewise, the beneficiaries of the will are not entitled to a second distribution merely because in making the first one Callan's and not the appellant's pen was used. The notices which Callan published concerning the filing of claims and concerning the eventual settlement of the account are entitled to the same legality as if the appellant's name had been signed to them, and as if he was

the one who had carried them to the printshop. Hence, the time is past for the filing and approval of claims. There remains no occasion, under these circumstances, to consider the claims mentioned by the appellant and which he deems are entitled to payment. Therefore, all creditors of the estate who are entitled to payment have been paid in full. The surplus available for distribution has been disbursed as directed by order of the probate judge and by a decree of the circuit court. Even if an accounting were to be awarded, exactly the same result would be reached as is indicated by Callan's final report because no item in it has been shown to be erroneous. Without proceeding further, we express our opinion that the order appointing Callan is complete protection for him for everything that he did in the administration of this estate. That being true, the first two items contained in the prayer of the petition are without merit. The prayer is summarized in a preceding paragraph of this opinion.

The third subdivision of the prayer seeks authority for the appellant to intervene in the suit instituted by Callan as trustee against the Western Investment and Holding Company. That suit was instituted after Callan's official report had been approved, he had been discharged as administrator, appointed trustee, and had received, as trustee, the filling station property. As the petition concedes, Callan brought this suit, not in his capacity as administrator, but in his capacity as trustee. In the suit which he filed a cancellation was sought of the deed held by the corporation above named. The issues in that suit are not disclosed by anything which is before us. An executor, after all claims have been paid, remains as a trustee for the beneficiaries of the estate: *Roach's Estate*, 50 Or. 179 (92 P. 118),

11 R. C. L., Executors and Administrators, p. 23, § 6. As the appellant himself concedes, the beneficiaries have on more than one occasion signified a firm desire that they do not want him to intervene in the above-mentioned suit. As is indicated in *In re Workman's Estate*, supra, the appellant is a stockholder in and a director and officer of the Western Investment and Holding Company. Whether the probate department should have authorized him to intervene in the suit was a matter calling for the exercise of the sound business judgment of the probate judge. We cannot conceive how any possible result of the suit instituted by Callan, trustee, could be beneficial to the estate of which the appellant is the executor, even if the intervention which he seeks is granted. Either Callan, as trustee, or the corporation will win the decree. It is impossible that the appellant could win. After having listened to the appellant's application the probate judge concluded that the authority should not be granted. We know of no reason for arriving at a different conclusion. The authority sought by this subdivision of the prayer will not be granted.

The fourth subdivision of the prayer asks for authority to bring proceedings against Callan for the possession of all letters, books, etc., belonging to the estate, and authority to commence an action against "the said A. C. Callan as trustee" for rents collected from the filling station property. It also seeks authority to institute actions against the lessee of that property and against Callan to enjoin him from making further rent collections. There is no showing in the record that Callan omitted to include in the probate files any material documents which he possessed. Sections 11-310 to 11-313, Oregon Code 1930, outline a pro-

cedure which an estate's representative may pursue for the purpose of obtaining documents of the kind which the appellant seeks. No explanation is offered by the appellant why the procedure outlined in these sections should not be followed in the instant case. The probate judge evidently interpreted the appellant's prayer as an application for authority to sue Callan. If he so interpreted it he did not err, in our opinion, when he denied this subdivision of the prayer. Next, it will be recalled that in a suit to which all of the beneficiaries of the will and all of the heirs of the deceased were parties the circuit court appointed Callan trustee to carry out the directions of that portion of the will which makes provision for future payments to the widow and the granddaughter of the deceased. After this had been done an order of the probate department directed Callan, administrator, to transfer to Callan, trustee, all of the funds and properties of the estate remaining after all claims had been paid. The transfer was made. No appeal was taken from the circuit court's decree nor from the order of the probate department just mentioned. The appellant recognizes the validity of that decree by seeking authority to sue "the said A. C. Callan, as trustee". The record indicates that the beneficiaries of the will and the heirs of the deceased are entirely satisfied with the disposition which has been made of the estate. Moreover, when we consider the following facts the arrangement which the parties effected among themselves and which the court embodied in its decree appears to be well calculated to give effect to the testator's principal wishes. His will provides that his widow shall receive $25 monthly during the remainder of her life, and also provides that his granddaughter shall be paid $25 monthly while she attends the public schools and later a university or business

college. Upon becoming 21 years of age she is to receive $500. The estate was appraised as worth $10,500, and claims totaling $1,800 were paid by Callan which included nothing for himself or his attorney. Cash legacies totaling $3,005 were payable at the time of distribution, but the beneficiaries apparently waived payment and permitted the entire corpus of the estate to be transferred to the trustee. During the period of administration Callan paid $540 to the widow and granddaughter in the required monthly payments. It seems obvious that when Earl Workman declined to receive the filling station property and make the monthly payments needed to take care of the widow and the minor grandchild the family was confronted with a difficult problem. The estate left by the deceased was too small to take care of the bequests. The problem was solved by transferring everything to a trustee so that the testator's principal wishes might be fulfilled. Certainly, the probate department had no power to set aside the decree of the circuit court which appointed Callan trustee. Until that decree is set aside Callan is entitled to collect the rents. The petition itself concedes that the Western Investment and Holding Company does not claim to be the beneficial owner of the property. Hence, it is not entitled to the rent. The appellant is not entitled to the rent because his predecessor, pursuant to court orders, conveyed the estate's interest in the property to a trustee. The order denying this subdivision of the prayer is not erroneous.

The fifth subdivision of the prayer seeks authority for the appellant to continue his investigation of the Alaska mines and of the contemplated litigation pertaining thereto. The claim of the estate against Smith Wanamaker, inventoried at a value of $1, is listed as

one of the properties which was conveyed to Callan as trustee. Hence, this claim is no longer in the possession of the deceased's estate, and the appellant has no right to administer upon it. However, the purported mines were not inventoried and the appellant, as executor, has filed no inventory. Their description in the petition is very vague. The beneficiaries of the deceased's estate are opposed to the contemplated investigation. The probate judge who listened to this petition refused to grant the authority. We affirm his decision.

The sixth subdivision of the prayer seeks authority and instructions to enter into negotiations concerning "the inheritance tax and income tax matters". No claims concerning these matters have been filed, and we know of no reason why such authority should be granted.

The seventh subdivision of the prayer concerning a reduction in the size of the executor's bond was promptly authorized by the probate judge.

The respondents have indicated no opposition to the eighth subdivision of the prayer. In the absence of objection, we assume that this subdivision of the prayer will be allowed.

The ninth subdivision of the prayer asks that the appellant's omission to object to Callan's final report and the orders based thereon be deemed excusable neglect. Whether the omission was due to excusable neglect or not, we know of no reason why the probate judge should have sustained any objection to the report. As has already been indicated, Callan accounted for all sums which he received and made no improper disbursements. This portion of the prayer is denied.

The tenth subdivision asks for a cancellation of the order which overruled the appellant's petition, filed

April 7, 1936. That petition was substantially similar to the one under consideration. The same reasons which prompt a holding that the second possesses no merit are equally applicable to the first.

The eleventh subdivision of the prayer is largely a reiteration of the previous subdivisions. It seeks a finding that all of the real property belonging to the estate was not inventoried, that property was appraised without proper investigation, that some of the claims against the estate remain unpaid, that the final report should have been rejected, and that the appellant should be permitted to probate the estate. From what has already been said, it necessarily follows that, in our belief, these contentions are without merit.

The decree of the circuit court, with the exception of the single modification suggested above, is affirmed.

Costs and disbursements are not allowed.

RAND and BELT, JJ., concur.

BAILEY, J., concurs in the result.

--------

KELLY, J. (dissenting). Upon six points, the writer is unable to concur in the opinion of the court.

■ That the appeal of Carruthers from the order denying and overruling his petition to be appointed executor did not operate to stay the proceedings. The writer is of the opinion that it did.

■ That a special administrator could not have been appointed pending appeal.

■ That pending said appeal, any duty rested upon Callan other than to conserve the corpus of the estate.

■ That the order was valid approving the purported final account of Callan and declaring the estate

fully administered when made upon the same day that this court rendered an opinion that Callan should not have been appointed at all, and directed the probate court to appoint Carruthers. The writer thinks that such order had and has no validity.

■ That the purported final account of Callan is correct.

■ That impliedly, at least, we should approve an arrangement whereby the E. C. Workman claim, the claim of Callan for fees and of Callan's attorneys for fees, alleged to have accrued for services in administering this estate, should be impressed upon the trusteeship.

There are five classes of appeals which, in order to stay proceedings, require a special form of undertaking in addition to one to the effect that the appellant will pay all damages, costs and disbursements which may be awarded against him on the appeal.

One of those classes of appeals is where the judgment or decree appealed from is for the recovery of money or of personal property or the value thereof. In those cases, in order to stay proceedings, the undertaking must provide that, if the judgment or decree or any part thereof be affirmed, the appellant will satisfy it so far as affirmed.

The second class requiring a special form of undertaking in order to stay proceedings is where the judgment or decree appealed from is for the recovery of the possession of real property, for a partition thereof, or the foreclosure of a lien thereon. In those appeals, the stay bond must provide that during the possession of such property by the appellant he will not commit, or suffer to be committed, any waste thereon, and if such judgment or decree or any part thereof be affirmed,

the appellant will pay the value of the use and occupation of such property, so far as affirmed, from the time of the appeal until the delivery of the possession thereof.

The third class comprises appeals from a decree requiring the transfer or delivery of·any personal property unless the things required to be transferred or delivered be brought into court or placed in the custody of such officer or receiver as the court may appoint. In this third class of appeals, the stay bond must provide that the appellant will obey the decree of the appellate court.

The fourth class involves appeals from decrees for the foreclosure of a lien, and also against the person for the amount of the debt secured thereby. In those cases the stay bond must provide that the appellant will pay any portion of such decree remaining unsatisfied after the sale of the property upon which the lien is foreclosed.

The fifth class embraces appeals from decrees requiring the execution of a conveyance or other instrument where such instrument is not executed and deposited with the clerk within the time allowed to file the undertaking. In this class, the stay bond must contain a provision to the effect that the appellant will abide the decree of the appellate court: Section 7-504, Oregon Code 1930.

To the writer it is so clear, so palpable, so obvious that the former appeal of this case was not included in either of the foregoing five classes requiring a special provision in the bond to stay proceedings that nothing more should be required than mere reference to the foregoing provisions of the statute.

In the opinion of the court, however, the following clause of section 7-505, Oregon Code 1930, is offered

as authority for holding that the appeal bond in the former appeal did not have the effect to stay proceedings:

"The court or judge thereof, in its discretion, may dispense with or limit the further undertaking required by subdivisions 1, 2, 3, 4 of section 7-504, when the appellant is an executor, administrator, trustee, or other person acting in another's right."

If the writer's construction of section 7-504, supra, is correct, there was not and there never could have been any further undertaking required of appellant in the former appeal than the one given; and, consequently, the court or judge could neither dispense with nor limit such nonexistent requirement.

To summarize the requirements pertaining to further provisions of the undertaking on appeal, as prescribed in said section 7-504, supra, we have the following:

1. That the appellant will satisfy the judgment or decree for money or personal property so far as affirmed. Certainly, such a requirement would have been an absurdity in the former appeal.

2. That during the possession of real property, pending foreclosure of a lien thereon or partition thereof, appellant will not commit or suffer to be committed any waste thereon and will pay the value of the use and occupation of such property. Such a provision would have been equally ridiculous.

3. That the appellant will obey the decree of the appellate court. If the former appeal had resulted in an opinion adverse to appellant, there could have been and would have been nothing for appellant to obey. No duty was enjoined upon him by the order from which he appealed. That order simply said in effect that he

should not become executor of the last will and testament of Harper Workman, deceased. So, with reference to this (the third class of appeals), nothing is shown affecting the former appeal and nothing appears which could be dispensed with or limited.

4. That the appellant will pay any portion of such decree remaining unsatisfied after the sale of the property upon which the lien is foreclosed. No lien was involved in the former appeal, no foreclosure was ordered, no decree for the payment of anything was made; and, hence, it would have been incongruous and improper to attempt to apply such a requirement to the former appeal or place any duty upon appellant to have the same dispensed with or limited.

5. To make any application whatever to the former appeal of the statutory provision affecting an appeal from a decree requiring the execution of a conveyance or other instrument is in the writer's view equally unwarranted.

Besides, the appellant in the former appeal was not an executor, administrator, trustee or other person acting in another's right. He was an individual acting solely for himself in an effort to become an executor. In a comparatively recent case the supreme court of Utah had occasion to pass upon the character of such a contest. The writer quotes therefrom:

"The expenses of the contest had between Mrs. Pingree and the Ogden State Bank, as to who should be appointed to administer the estate are not proper charges against the estate. *That contest was of a private character* in which the estate had no interest, except that some competent person be appointed." (Italics supplied.) *In re Pingree's Est.* 82 Utah 437 (25 P. (2d) 937, 90 A. L. R. 96).

The following authorities are cited in the opinion of the court in support of the proposition that Carruthers' appeal bond did not have the effect to stay proceedings: *Helms, Groover & Dubber Co. v. Copenhagen,* 93 Or. 410 (177 P. 935); *Livesley v. Krebs Hop Co.,* 57 Or. 352 (97 P. 718, 107 P. 460, 112 P. 1); 3 Am. Jur. App. & Error, p. 196, § 538; *Spring v. South Carolina Ins. Co.,* 6 Wheat. 518 (5 L. Ed. 320). As the writer understands these authorities, they recognize the inherent right of an appellate court in the absence of a statute to issue an order of supersedeas to preserve the *status quo* or to direct such a proceeding as best conduces to the preservation thereof pending review. The writer thinks that by analogy of reasoning, these authorities would justify an appointment of a special administrator or an administrator *pendente lite* in the case at bar if there were no statutory authority therefor.

*In re Levy's Estate,* 125 Wash. 240 (215 P. 811), cited in the opinion, merely holds that where the order appointing an administrator, from which an appeal was taken, was not superseded, the administrator could proceed with the administration.

The case of *Dutcher v. Culver,* 23 Minn. 415, cited in the opinion of the court, was originally brought by Eliza A. Dutcher, as administratrix of the estate of Gilbert Dutcher, deceased. After the commencement of the action, the probate court entered an order removing her from administration. She appealed. While the appeal was pending, the probate court entered an order appointing R. J. Martin, administrator *de bonis non.* An appeal was taken from that order.

It was held by the supreme court that the appeals mentioned did not stay the proceedings, and hence Mar-

tin was entitled to be substituted as plaintiff in the case. The writer quotes from the opinion in the Minnesota case:

"To such appeal the statute does not make it necessary for the appellant to indemnify against the injurious consequences of taking it."

In Oregon, in such a case as the Dutcher-Culver case, the statute requires indemnification either by delivery of the property in court or by appropriate provision in the bond: Section 7-504, supra.

The distinction between the case at bar and the Minnesota case of *Dutcher v. Culver,* is that in the Minnesota case the appellant was in possession of the corpus of the estate and gave no indemnity against possible loss by her failure properly to account therefor and make delivery thereof if the order of removal should be affirmed. In the case at bar, at the time of the former appeal, Carruthers had no property whatever belonging to the estate and no other provision is made whereby he could have secured a stay of proceedings, except the provision contained in the final sentence of section 7-505, Oregon Code 1930.

It is evident from the opinion in the Dutcher-Culver case that Minnesota had no such statute.

The rule in Minnesota seems to be that whether an appeal operates as a stay of proceedings depends upon whether the court thinks the consequences of giving the appeal that effect, or the contrary effect, will be good or bad.

In the Dutcher-Culver case, supra, the appeal was held to stay proceedings. In a much later case, involving an appeal by several common school districts from an order of the county superintendent of schools grant-

ing a petition for the consolidation of said common school districts with certain joint districts, the Minnesota court held that an appeal had the effect of staying proceedings. The writer quotes from that opinion:

"In Dutcher v. Culver, 23 Minn. 415, there was an appeal to the district court from an order of the probate court, and it was held that it did not stay the operation of the order. It was remarked that, where the statute provides that a party may appeal no certain inference can be drawn from the term 'appeal' alone as to its effect on the proceedings below and that, in determining what that effect is the general policy of the law may be looked to, as well as the practical consequences of giving the appeal the effect to stay proceedings or the contrary effect.

　　*　　　*　　　*　　　*　　　*

The statute makes no provision for a stay, but the practical consequences of holding that the appeal does not operate as a stay would be unfortunate.

For reasons of public policy and to preserve the rights of the parties to such proceedings in statu quo until they have been finally determined, we hold that an appeal from an order consolidating school districts suspends the operation of the order while the appeal is pending." *School District No. 30 v. Consolidated School District No. 30,* 151 Minn. 52 (185 N. W. 961).

The writer is of the opinion that in Oregon the statute is controlling which unambiguously and directly declares that in cases not within the terms of any of the four subdivisions of section 7-504, supra, the perfection of an appeal has the effect to stay proceedings.

*Hughes v. Hodges,* 94 N. C. 56, cited in the opinion, is an action for the foreclosure of a mortgage. The substituted plaintiff was the executor of the will and estate of the mortgagee. A caveat was entered attacking the execution and validity of said will. Among other

issues, it was first contended that the executor could not become a party plaintiff and prosecute the action pending the controversy raised by the caveat. The writer quotes from the opinion in that case:

"The answer to the first ground of objection * * * is furnished in the statute, which declares that:

"When a caveat is entered and bond given as directed in the two preceding sections, the Clerk of the Superior Court shall forthwith issue an order to any personal representative having the estate in charge, to suspend all further proceedings in relation to the estate, *except the preservation of the property and the collection of debts, until a decision of the issue is had.* The Code, § 2160.

"This provision is manifestly intended, in cases to which it is applicable, to dispense with the necessity of appointing an administrator *pendente lite,* and confers very similar forms upon the executor, and more especially when he has entered upon the duties of his office before the caveat is entered. Syme v. Broughton, 86 N. C. 153.

"The prosecution of the action in order to the collection of the debts, is evidently sanctioned by the statute and in furtherance of the purpose of its enactment." Hughes v. Hodges, supra.

Oregon has no such statute.

This question, that is, whether the provisions of section 7-504, supra, were or are applicable to the former appeal, has been decided in California.

The supreme court of that state, speaking through Mr. Justice McFarland, say:

"There was a contest in the court below between C. M. West and George Bronner, as public administrator, for letters of administration of this estate, which was decided in favor of the latter. West appealed from the order appointing Bronner administrator, giving

an undertaking on appeal in the sum of $300, as provided for in section 941 of the Code of Civil Procedure; but Bronner is proceeding to administer the estate, and the matter now before us is an application by West for an order staying all proceedings until the determination of the appeal. The undertaking provided for by section 941 'stays all further proceedings in the court below upon the judgment or order appealed from, or upon the matters embraced therein,' except in those cases specified in section 942-945, and a few special matters mentioned in section 949, not material here. * * * But appellant here is not within the said sections from 942 to 945, which 'apply to appellants who are required to perform the directions of the judgment or order appealed from.' Estate of Schedel, 69 Cal. 241, 10 Pac. Rep. 334.

\* \* \* \* \*

"If, as suggested by respondent, there be any danger of loss to the estate from a stay of proceedings, such danger can be avoided by the appointment of a special administrator under section 1411." *In re Wood's Estate*, 94 Cal. 567 (29 P. 1108).

Sections 942–945, Code of Civil Procedure of California, in effect when the case last cited was decided, were very similar to section 7-504, Oregon Code 1930.

An appeal bond has the effect to stay proceedings in a case not within the statutory exceptions: Section 7-505, Oregon 1930; *In re Vinton*, 65 Or. 422 (132 P. 1165); *Bestel v. Bestel*, 153 Or. 100 (44 P. (2d) 1078); *City of Los Angeles v. Pomeroy*, 132 Cal. 340 (64 P. 477); *Root, Neilson & Co. v. Bryant*, 54 Cal. 182; *Rohrbacker v. Superior Court*, 144 Cal. 631 (78 P. 22); *In re Stough's Estate*, 173 Cal. 638 (161 P. 1); *O'Donnell v. Sixth Judicial District Court*, 40 Nev. 428 (165 P. 759).

In this connection it must be borne in mind that in Oregon it is unnecessary to apply for or procure an order staying proceedings. Perfecting an appeal, *ipso*

*facto,* has that effect: *In re Vinton,* supra; *Bestel v. Bestel,* supra.

The opinion of the court declares that because the language of the statute authorizing the appointment of a special administrator is that "when for any reason there shall be delay in issuing letters testamentary or of administration," the court could not have appointed a special administrator after it had already issued letters to Callan. In the opinion of the writer this is an unreasonably restricted and unjustifiably narrow construction of the statute.

In the opinion of the writer, the proceedings in the special administration are separate and distinct from the general administration and the construction, which should be given to the statute above quoted is that, if for any reason there shall be delay in *effectively* issuing letters testamentary or of administration, a special administrator may be appointed.

It is said in the opinion of the court that the cases, *In re Cavanaugh's Will,* 72 Misc. Rep. 584 (131 N. Y. S. 982), and *In re Leland's Will,* 175 App. Div. 58 (161 N. Y. S. 320), do not support the contention that a special administrator may be appointed pending an appeal.

The difference between the New York statute and section 11-214, Oregon Code 1930, renders the Leland case peculiarly and aptly in point here. The New York statute provides, among other things, as follows:

"On the application of a creditor, or a person interested in the estate, the surrogate may, in his discretion, issue to one or more persons letters of temporary administration, in either of the following cases: 1. When for any cause, delay necessarily occurs in the granting of letters testamentary or letters of administration, or in probating a will * * *" Section 2596, N. Y. Code of Civil Procedure.

As stated, the language of the Oregon statute is: "When for any reason there shall be delay in *issuing* letters testamentary or of administration."

The writer quotes from the opinion in the Leland case, supra:

"It is contended by the learned counsel for the respondent that said section 2596 has no application, for the reason that there was no delay in granting letters testamentary. They argue that the letters were granted by the decree of July 12, 1916, although the issuance thereof was stayed by the appeals therefrom. That would be a narrow and unreasonable construction of the provisions of the Code. Here delay necessarily occurred in granting the letters, which as used in said section 2596, means the issuing of the letters. The administration of the estate is not aided by the mere fact that a decree has been made authorizing the issuance of letters, if the issuance of the letter is stayed. * * * We are of the opinion that the surrogate * * * should have appointed a temporary administrator pursuant to the provisions of said section 2596 of the Code of Civil Procedure."

*In re Cavanaugh's Will,* supra, on the 19th day of February, 1907, letters testamentary were issued to Annie B. Cavanaugh, the sole executrix named in a purported will dated February 15, 1906. On January 23, 1911, the supreme court entered a judgment that said purported will was invalid. On the 29th day of January, 1911, another will was filed for probate, the same being dated September 23, 1904.

An appeal was taken from the judgment of the supreme court declaring the probate to be invalid and the alleged will to be null and void. The writer quotes from the opinion:

"If an appeal from the judgment of the Supreme Court has been perfected and a prior will is offered for probate or letters of administration are applied

for, he [the surrogate] should suspend proceedings in either of such cases until the final determination of the Supreme Court action then upon appeal; and, in the meantime, upon a proper application being made, he should appoint a temporary administrator of the estate to whom the former executor may account in a proper proceeding and to whom the estate may be turned over for management and preservation. Upon a final determination of the action in the Supreme Court, the surrogate will then be in a position to issue new letters testamentary to the executor named in the will, if such will be finally sustained; or, in event that it be not sustained, to take the probate of another will, or to grant letters of administration, as the case may require, freed from the embarrassments and entanglements which might arise if in the first instance he admitted another will to probate or granted general letters of administration." *In re Cavanaugh's Will,* 72 Misc. Rep. 584 (131 N. Y. S. 982).

It will be noted that in the first New York case [*In re Leland's Will*] notwithstanding that there had been no delay in *granting* letters testamentary, and that the statutory provisions that, "when for any cause delay necessarily occurs in the *granting* of letters testamentary," etc., letters of temporary administration might issue, the court held that letters of temporary administration should issue.

In the case at bar, the statute of Oregon employs the word "issuing" instead of the word "granting". The doctrine upheld by this New York case commends itself to the writer and to him it seems to be directly in point in refusing to apply "a narrow and unreasonable" construction of the provisions of the code. Certainly, if "granting letters testamentary" includes "issuing" them, then, "issuing" them must mean issuing them effectively.

The New York case said:

"The administration of the estate is not aided by the mere fact that a decree has been made authorizing the issuance of letters if the issuance of the letters has been stayed."

With equal propriety, it may well be said that the administration of the estate in suit was not aided by the mere issuance of letters testamentary if further proceedings thereunder were stayed.

It is suggested that if an appeal from an order denying letters testamentary to a person named as executor stays proceedings, then an appeal from an order appointing a special administrator would have the same effect and no relief could be had by appointing an administrator. The fallacy of this argument lies in the fact that an order appointing a special or temporary administrator is not a final order and no appeal lies therefrom: *Pratt v. Kitterell*, 15 N. C. 168.

The Cavanaugh case is in point in that it clearly outlines the proper procedure in cases such as the one at bar and discloses the advantages to be gained thereby.

Being convinced that an order could well have been made appointing a special administrator, the writer believes that only the duties of a special administrator, if any, devolved upon Mr. Callan. Being also convinced that Mr. Carruthers' appeal stayed proceedings, the writer thinks that no action taken by Mr. Callan, other than that which a special administrator would have been authorized to take, should be approved.

The writer is mystified with respect to the effect ascribed by the opinion of the court to its former opinion. Here we are considering an order finally closing an estate upon the report of an unauthorized adminis-

trator. At least, upon the same day that the probate court made an order, which, when made, the writer understood to be one in which it was held that Mr. Callan had no authority as administrator and in which it was expressly directed that Mr. Carruthers should be appointed executor. The present opinion holds that, with the exception of a matter unworthy of notice, the order of final settlement must be approved, although unauthorized and based upon the support of a mere de facto administrator, whose purported official standing was disavowed by the former opinion. In the view of the writer, the probate court backs the supreme court up against the fence and makes this court of last resort eat its words and rejoice in the feast thus provided. The writer refuses to eat such a repast or rejoice because the majority seem to enjoy it.

To the writer, the plea that the accounts of Callan are correct is a pitiable excuse for facing about and in effect saying now, directly contrary to what was said in the former opinion, that it was not at all necessary for Mr. Carruthers to be appointed as executor; that the testator's wishes in that regard are of no concern to us and that it is better for us to consider our former opinion unsaid. Let a waiting world know that the writer of this dissent did not write the former opinion. It was written by no less distinguished, experienced and learned jurist than our present chief justice. Further than that, the writer thinks that such an account, as Mr. Callan's, if offered by one regularly and legally authorized to make it, should not be approved. The account discloses that a claim, that of E. C. Workman, has been allowed, but it nowhere shows that it has been paid. The writer thinks that the estate cannot be finally closed until all claims, which have been allowed, have been paid

and vouchers showing such payment have been filed. The writer also thinks that the fees of the administrator and of his attorneys should be paid in the course of the administration before an order of final settlement should be entered.

Upon reargument, the attorney for Mr. Callan did not equivocate. He said: ''The administrator has not been paid; attorneys' fees have not been paid, but they are looking entirely to the trusteeship expecting some day that they will be.''

In referring to the E. C. Workman claim, Mr. Callan's attorney said: ''That claim has not been paid, however, the claim has not been withdrawn. The claimant is looking to the residuary beneficiaries under the will and the trustee should take care of it.''

In the face of this candid statement made in open court before a full bench, when we approve a purported final account of an unauthorized administrator conditioned upon such an unwarranted arrangement with respect to a trusteeship now pending, are we not inviting another delectable (?) repast, when, as is entirely possible, we may say probable, an appeal in this or some other trusteeship should reach us involving the propriety of impressing the expenses of administration and the payment of a claim against the estate in probate upon the corpus of such trust?

No good purpose can be served by an extended discussion of the question whether Callan's acts as administrator were void or merely voidable. If the proceedings were stayed, the writer is unable to conceive how his attempt at further proceedings would have any validity. Certainly, such a course, in violation of an express statutory provision prohibiting it, would not operate to destroy the right of the regularly appointed

executor to require an accounting at Callan's hands. The writer thinks that only such order, if any, of the probate court subsequent to the perfection of the former appeal as may have been in aid of such appeal, were valid or enforceable.

In the writer's view, the attempt to impress upon the trusteeship the payment of administrators' fees, attorneys' fees for services performed in the administration of the estate, and the payment of at least one claim, the justness of which Mr. Carruthers challenges, should not have the sanction of this court. The writer thinks that those matters should be determined before the closing of the administration.

The writer is unwilling to give effect to an order of the probate department of the circuit court made upon the same day an opinion of the supreme court is announced diametrically opposite to the terms of such order.

In the opinion of the writer, if in such a case, as the one at bar, the condition of the estate requires administrative attention to conserve it, the proper course to pursue is to appoint a special administrator: Section 11-214, Oregon Code 1930; *In re Cavanaugh's Will,* supra; *In re Leland's Will,* supra. The writer thinks that the authority thus given to appoint a special administrator negatives the suggestion that the estate would have suffered for want of administrative attention if Mr. Callan had not administered it.

With due respect to his learned associate, who wrote the opinion, and to the other ¬minent jurists, who concur therein, the writer dissents.

BEAN, C. J., and CAMPBELL, J., concur in the foregoing dissent.

Petition for rehearing denied May 11, 1937

ON PETITION FOR REHEARING

(68 P. (2d) 479)

■ ROSSMAN, J.  H. J. Carruthers, the executor-appellant, has filed a petition for a rehearing in which he insists that our entire decision was in error. The petition is accompanied with a brief. In behalf of his contention that the cost bond acted as a supersedeas, he cites: *Bestel v. Bestel*, 153 Or. 100 (44 P. (2d) 1078, 53 P. (2d) 525); *State ex rel. Huber v. Tazwell*, 132 Or. 122 (283 P. 745); *In re Vinton*, 65 Or. 422 (132 P. 1165); *Anderson v. Phegley*, 54 Or. 102 (102 P. 603); *Stewart v. Saratoga and Whitehall Railroad Co.*, 12 Howard's Prac. Rep. 435; *Hibbard v. Burwell*, 11 Howard's Prac. Rep. 572; *The Trustees of the Village of Penn Yan v. Forbes*, 8 Howard's Prac. Rep. 285; *Mead v. Jenkins*, 4 Demarest's Rep. 84; *Thompson v. Blanchard*, 2 Comstock's Rep. 561; *Vreedenburgh v. Calf*, 9 Paige's Chancery Rep. 128; Ross, Probate Law and Practice, § 243 a; Bancroft's Probate Practice, p. 171; 4 C. J., pp. 1204-1209; *Golde Clothes Shop Inc. v. Loew's Buffalo Theatres, Inc.*, 236 N. Y. 465 (141 N. E. 917, 30 A. L. R. 931); 4 Wait's New York Prac. (2d) § 1134.

The first six of the above decisions, according to the appellant, construe a former New York statute concerning appeals (Vorhies' New York Code of Procedure, 3rd edition, §§ 333 to 343) which the appellant believes was the parent of our statute.

We examined the New York statute, the Corpus Juris section, the above-cited Oregon decisions (with the exception of *Anderson v. Phegley*, supra,) and some of the New York decisions before we wrote our previous decision. We have again examined these authorities, together with the others which the appellant cites, but

remain satisfied that the appellant's cost bond did not operate as a supersedeas.

■■ The appellant argues that since he is now the executor of the decedent's estate, he is entitled to an accounting from the respondent, A. C. Callan, who, as stated in our previous decision, was erroneously appointed administrator with will annexed. The appellant seems to believe that our decision denied him the right to an accounting. For instance, he states: ''In effect he holds that Callan's appointment was with authority, and refuses the executor an accounting and every other remedy and authority he is given by statute. It might well be pointed out here that one of the points raised by this appeal is the refusal of the probate court to allow an accounting. If it is now conceded that appellant is executor and possesses authority to audit Callan's account, why should the supreme court deny the executor's appeal for such remedy when the probate court and Callan have refused it and the appellant seeks the right through this appeal?'' By reverting to the prayer concluding appellant's petition, reviewed in our former decision, it will be observed that the appellant did not pray for an accounting by Callan. It is true that he alleged he had made ''written demands upon A. C. Callan, Trustee,'' for an accounting, but the plaintiff has no interest in the trust estate and, hence, is not entitled to an accounting by Callan, Trustee. Moreover, no one has sworn that the accounts filed by Callan are not correct. The appellant's right to an accounting, if he wished one, has not been questioned during the course of this appeal, and our decision stated: ''The respondents, who are Callan and two of the beneficiaries of the will, concede that the appellant is now executor and admit that he possesses authority to audit Callan's accounts

and complete anything that Callan may have left unfinished.'' The decision nowhere denied that the appellant was entitled to an accounting, and, since no one questioned his right to one, we made no further reference to the subject other than the language just quoted. In fact, as stated in our previous decision, Callan filed accountings and accompanied them with vouchers, receipts, cancelled checks, claims filed and other supporting data. These statements of account received extensive attention in the petition which instituted the present controversy. As stated in our previous decision, the appellant's criticism of them, upon review by this court, revealed no irregularity whatever.

■ The appellant seems to believe that since he is now executor he is entitled to engage in any course of conduct his sense of duty suggests, and that he ought to be entitled to expend the estate's resources in defraying the expenses attendant upon such ventures. Such being his beliefs, he again insists that the eleven subdivisions of the prayer which conclude his petition ought to be allowed. He argues that ''the statutes'' confer upon him power to pursue his contemplated course. He, however, cites none. If any statutes confer such broad power and do not subject it to judicial supervision, then it was wholly unnecessary for the appellant to have filed the petition which instituted this controversy. By filing it he conceded that the authority which he seeks could be withheld if the probate judge believed that it should not be granted. Section 11-223, Oregon Code 1930, referring to the probate judge, provides:

''It is the duty of the court or judge thereof to exercise a supervisory control over an executor or administrator, to the end that he faithfully and diligently perform the duties of his trust according to law.''

In *In re Marks' Estate,* 81 Or. 632 (160 P. 540), there was re-echoed the statement found frequently in the Oregon decisions:

"In the very nature of things, County Courts are vested with a very large discretionary power over the conduct of executors and administrators."

Thus, it is evident that while the executor or administrator stands in the shoes of the deceased and is charged with the duty of terminating the undertakings of his decedent, he does not possess all of the rights and powers that the deceased enjoyed. He is merely the representative of the latter, and is, therefore, a fiduciary. He cannot serve himself as the deceased had done, but is the trustee for the creditors and beneficiaries. To these two groups he owes a duty and it is incumbent upon the probate judge to see to it that he performs that duty. Besides seeing to it that the estate's representative discharges his duties faithfully and diligently, he owes a duty to preserve the estate from loss, if possible. To enable the probate judge to accomplish these objectives, the law grants him supervisory control, or, as it is sometimes called, superintending control, over the acts and conduct of all persons handling estates of decedents. The extent to which the probate judge should direct the conduct of the estate's representative is, of course, dependent upon the circumstances. If the question concerns the construction of the will or the disposition of the estate after all debts have been paid, the judge's duty is clear and he must give directions, upon petition. In all cases where reasonable men could entertain doubt as to the duty of the representative or where questions of policy arise affecting the security of the estate, the judgment of the probate judge should be consulted before the

representative proceeds. But if the question merely concerns a matter of business judgment and does not involve any condition which makes it unsafe for the representative to go ahead, the judge may properly decline to give advice. And, of course, the probate judge will not take the place of counsel and undertake to become the legal adviser of those interested in the estate. From *In re Wilson's Estate*, 85 Or. 604 (167 P. 580), we quote:

"In the administration of an estate, of which the County Court has exclusive jurisdiction in the first instance, it is necessary for that court to direct the executors how to proceed, to whom the property in their hands shall be given, and what each shall receive. It has full power and jurisdiction to respond to such a petition by an appropriate decree. That is one of its functions and duties."

The following is taken from Bancroft's Probate Practice, § 336:

"An administrator, duly appointed, is thus an officer of the court, subject to its orders, answerable to the court in contempt proceedings or liable to removal from office for refusal to obey the order of the court, and is entitled to the protection of the court in carrying out its orders. Except under the nonintervention will statutes existing in a few states, the policy of the law is that the court have supervisory control of all the acts and transactions of either an executor or an administrator. Indeed probate courts are vested with very extensive discretionary power over the conduct of these officers, and exercise of such discretion will not be interfered with on appeal unless plainly required by some principle of law. An executor or administrator thus holds the estate substantially as a stakeholder, for delivery in accordance with the court's order of distribution. The probate court or judge is the actual guardian of the estate, and all proceedings are under its direc-

tion. The executor or administrator derives his power from the order of the court issuing his letters, and acts simply under its control."

■■ From the above it will be observed that the representative is at all times subject to the superintending power of the probate judge. The appellant, while citing none, repeatedly refers to "the statutes" and seems to believe that there are laws which confer power free from judicial scrutiny. Of course, the probate judge, in exercising his supervisory power cannot deny to an executor anything which a statute grants, but we know of no statute which directs an executor to pay claims which have not been presented; nor do we know of any which directs an executor, over the objections of the beneficiaries, to employ the estate's funds in maintaining litigation. The brief contains intimations of secret directions by the deceased for the institution of litigation and a statement which seeks to impugn the motives of the family. Neither statement is justified by the record, and by the latter we are bound. Many a man has gone through life maintaining peace with his fellow men and without once having his name entered upon a court record, and yet after his death his name is repeatedly entered upon court journals and becomes a symbol of litigation. Ordinarily, it is an ungrateful relative who is responsible, but here is an executor who, over the positive and united remonstrances of the family, proposes to inject the deceased's name into litigation, not only in Oregon but also in Alaska. Since the members of the family are the only persons interested in the estate, their wishes ought to control.

In his brief the appellant, referring to our decisions, asks, "In what condition does this leave the valuable

mining property in Alaska?" As stated in our previous decision, the Alaska property, if the deceased possessed any, was not inventoried by Callan, and nothing whatever has been done concerning it. It is now available to the appellant, if it exists.

■ As will be observed from the foregoing section of Bancroft's Code Practice, appellate courts do not interfere with the exercise of the probate judge's discretion unless the circumstances show that it was exercised in an unsound manner. All of the heirs of the deceased and the beneficiaries of his will have approved the order from which this appeal is prosecuted. Under the circumstances, that ought to be sufficient justification for the order.

For the foregoing reasons the petition for a rehearing is denied.

KELLY, J. (specially concurring). For the reason that he is convinced that further argument would be unavailing, and for that reason alone, the writer concurs in the result of the foregoing written opinion denying appellant's petition for a rehearing.