[No. 2080-1.    Division One.    June 3, 1974.]

In the Matter of the Guardianship of LAWRENCE BOUCHAT.
LAWRENCE BOUCHAT, *Respondent*, v. ROBERT UPHOFF *et al.*,
*Respondents*, FIRST UNITED METHODIST CHURCH OF
SEATTLE, INC., *et al.*, *Appellants*.

*Clinton, Andersen, Fleck & Glein* and *Russell R. Pearson* and *Lightner Smith,* for appellants.

*Ronald W. Meier,* for respondents.

WILLIAMS, J.—The controversy in this case is over the business affairs of an elderly gentleman, Lawrence Bouchat. A church, First United Methodist Church of Seattle, Inc., claims an equitable lien upon his real property for moneys advanced and services rendered. Mr. Bouchat asks that the church be considered an intermeddler and required to return his property and moneys which it collected upon his behalf. The cause was tried to the court without a

jury and resulted in findings favoring the position of each party, in part. From the judgment entered, the church appeals and Mr. Bouchat cross-appeals.

The findings of the trial court are not challenged by either party and so constitute the facts of the case. In brief, they are that in the spring of 1970, Mr. Bouchat, then 83 years of age and a resident of Seattle, became ill. At the request of the church, he was placed in Bayview Manor, a facility wholly owned by the church through a subsidiary corporation, Seattle First Methodist Home, Inc. There, Mr. Bouchat was given food, lodging and nursing services. The church petitioned the King County Superior Court for the appointment of its business manager as guardian of the person and estate of Mr. Bouchat. Although the petition was granted on June 12, 1970, no notice of the hearing on the petition was given to Mr. Bouchat. The church's business manager entered upon his duties as guardian, caused Mr. Bouchat's estate to be inventoried and made certain collections and expenditures on his behalf.

With the exception of a few small items, the estate consisted of 3½ lots of business property in Seattle which were subject to a substantial mortgage. One of these lots was leased to a business concern at a rental of $550 per month. The guardian conveyed this property to the church in exchange for the promise of the church to provide for Mr. Bouchat during his remaining years. The exchange was held pursuant to an order of court entered upon the guardian's petition and following the appointment of a guardian ad litem, who stated in his report that the sale was to the best interest of Mr. Bouchat.

The church then mortgaged the 3½ lots and some real estate contracts which it owned to a bank to secure a loan of $92,000. The proceeds of this loan were used to pay off the existing mortgage indebtedness of $52,363.50, to refund construction loans of $35,659.35 made by the bank to the church to build an addition to the building on the leased property, and $3,977.15 for loan expense. As a result of the

construction of the addition to the building, the tenant agreed to pay rental of $800 rather than $550 per month.

On February 24, 1972, Mr. Bouchat filed a petition which challenged the jurisdiction of the court and asked that all orders entered in the guardianship proceedings be vacated, that all deeds and mortgages made pursuant thereto be set aside, and that his property be restored to him. Following the hearing on this petition, the trial court found that service of the initial notice upon Mr. Bouchat was defective and that all actions of the court and guardian in the guardianship proceeding were void. This was correct. *In re Teeters*, 173 Wash. 138, 21 P.2d 1032 (1933); *Mayer v. Rice*, 113 Wash. 144, 193 P. 723 (1920); *State ex rel. Lowary v. Superior Court*, 41 Wash. 450, 83 P. 726 (1906).

Also, the court found that the agreement for Mr. Bouchat's support in return for the transfer of his property to the church "was in his best interest at that time" and that:

> At the time he was placed by the church in Bayview Manor and for an indefinite period of time thereafter, the evidence does not show for how long a period of time, Bouchat was confused, disoriented and incapable of managing his property and of caring for himself.

Further, the court found that

> The church, its attorneys and Robison were interested in being fair with Bouchat, in doing what was in the best interest of Bouchat and in obtaining fair compensation for the services rendered by the church and/or Bayview Manor.

The first question is whether the court erred in not reimbursing the church for the net amount it had expended on Mr. Bouchat's behalf. In view of the fact that the probate jurisdiction of the court was never successfully invoked, it could only proceed in the exercise of its equity jurisdiction. *Donaldson v. Winningham*, 48 Wash. 374, 93 P. 534 (1908). Although there appears to be no decisional authority in the state of Washington bearing upon the point, the following rule should be applied:

> As *quasi* guardian or guardian *de facto* acting with *bona*

*fides*, one is entitled to reasonable and proper credits for maintenance of the beneficiary and for expenditures incurred on his account. Such a guardian is a trustee of the beneficiary's estate, and the accounting must be deemed in the nature of an accounting in equity, where it is presented in the probate court subsequent to the inception of the *de jure* status, and must be determined on equitable principles the same as in an action in equity for an accounting by such trustee. The criterion for determining whether a past maintenance should be allowed is whether a chancery court would have authorized it in advance. [Cases cited.] A guardian *de facto* is subject to all the duties and liabilities of a guardian. [Case cited.]

*In re Estate of Giambastiani,* 1 Cal. App. 2d 639, 37 P.2d 142 (1934).

*Giambastiani* is of particular importance because the de facto guardian was reimbursed for moneys which he had expended in good faith out of his own funds for the benefit of his ward, as happened in this case. Other decisions from foreign jurisdictions support recognition of a de facto guardian. *Alexander v. Hillebrand,* 140 Mich. 490, 103 N.W. 849 (1905); *Kelly v. Kelly,* 89 Mont. 229, 297 P. 470 (1931); *In re Estate of Gilfillen,* 170 Pa. 185, 32 A. 585 (1895). The church should be reimbursed for sums to which it would be entitled if the jurisdiction of the court in the guardianship proceeding had been successfully invoked.

The formal findings of the court, which are unchallenged and so constitute the facts of the case, contain a detailed accounting of the receipts and expenditures of the church in Mr. Bouchat's behalf. It will be necessary for the court to enter additional findings specifying which expenditures it would have authorized had it had jurisdiction.

The next question is whether the church is entitled to an equitable lien upon Mr. Bouchat's real property in the amount paid by the church for construction of the addition to the building. There is case support for Mr. Bouchat's position that the church, because it was a volunteer, is not entitled to an equitable lien. *Falconer v. Stevenson,* 184 Wash. 438, 51 P.2d 618 (1935); *Vanhorn v. Nestoss,* 99

Wash. 328, 169 P. 807 (1918). Equity will not aid a volunteer. *Norris v. Tebrich,* 65 Wn.2d 238, 396 P.2d 637 (1964). Mr. Bouchat had no voice in the conveyance of the property to the church, or the mortgaging of it to the bank. However, we need not develop that question because in one of its findings the court adopted an agreement made "by all parties and their counsel, in open court" which recognized the existence of an equitable lien upon the property. The finding incorporates a conclusion of law which details the extent of the lien. No objection was made to this finding, nor was it set out in the brief as required by CAROA 43. It may not be considered. We would observe, though, that the terms of the lien are based upon sound equitable principles, and it is apparent that the court devoted considerable time and effort in arriving at a fair and just resolution of the problem.

■ Next is the question of payment for services rendered Mr. Bouchat by Bayview Manor. The court did not rule out the charges for bed, board, and services at Bayview Manor, but simply held that Bayview Manor's claim, if any, was not properly a part of the cause before the court and could be considered in an independent action. The rule is:

> When equity assumes jurisdiction over the subject matter of an action and the parties to be affected by its decree, it will retain jurisdiction for all purposes. Jurisdiction having attached, it extends to the whole controversy, and whatever relief the facts warrant will be granted.

*Hubbell v. Ward,* 40 Wn.2d 779, 787, 246 P.2d 468 (1952). *Accord, Carstens Packing Co. v. Cox,* 47 Wn.2d 346, 287 P.2d 486 (1955).

The controversy in this case emanated from the taking over of Mr. Bouchat's property by the church and the receipt and disbursement of his funds. Considerable evidence was introduced concerning Mr. Bouchat's stay at Bayview Manor and the reasonable charges therefor. No useful purpose is to be served by deferring decision on what, if any-

thing, Mr. Bouchat owes Bayview Manor. Litigation between parties who are before the court, arising out of the same transaction, should be determined in one action to avoid multiplicity of suits. *Longenecker v. Brommer*, 59 Wn.2d 552, 368 P.2d 900 (1962).

Finally, there is the question of the priority of the lien of a mortgage on the real property held by the attorney for Mr. Bouchat. One of the findings states in part:

> It was agreed by the church and said Meier [attorney] in open court that the court might determine in this proceeding the priority as between the equitable lien of the church specified in Conclusion X and the mortgage of Meier.

In view of all of the circumstances, we do not believe that the court abused its discretion in placing the attorney's mortgage ahead of the equitable lien of the church.

The cause is remanded for further proceedings not inconsistent with this opinion. In view of our disposition of this case, neither party shall recover costs.

HOROWITZ and FARRIS, JJ., concur.

Petition for rehearing granted October 4, 1974.