Argued and submitted August 17, 2006, reversed and remanded as to compensation for Allen Trust Company's services as trustee; otherwise affirmed February 7, respondent Ronald W. Harriman's petition for reconsideration filed February 20, and appellant Allen Trust Company's response to respondent Ronald W. Harriman's petition for reconsideration filed February 27 allowed by opinion May 16, 2007

See 212 Or App 572, _____ P2d _____ (2007)

# ALLEN TRUST COMPANY,
*Appellant,*

*v.*

# COWLITZ BANK
# and Ronald W. Harriman,
*Respondents.*

## Multnomah County Circuit Court
## 030891392; A128473
### 152 P3d 974

Andrew J. Lee argued the cause for appellants. With him on the briefs were Jan K. Kitchell and Schwabe, Williamson & Wyatt, P.C.

Matthew Whitman argued the cause for respondent Ronald W. Harriman. With him on the brief were James R. Cartwright and Brooks F. Cooper.

Monica M. O'Brien waived appearance for respondent Cowlitz Bank.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Leonard, Judge pro tempore.

BREWER, C. J.

## BREWER, C. J.

Allen Trust Company (Allen Trust) appeals from a summary judgment in favor of Ronald W. Harriman that required Allen Trust to repay fees that it had taken during the period that it purported to act as the trustee of the Ronald W. and Jean A. Harriman Irrevocable Living Trust (the trust). We reverse in part.

Because the trial court granted Ronald's motion for summary judgment, we state the facts most favorably to Allen Trust, drawing all inferences in its favor. *See* ORCP 47 C; *Schaff v. Ray's Land & Sea Food Co., Inc.*, 334 Or 94, 98-99, 45 P3d 936 (2002). The relevant facts include those that were part of the record of the case at the time that the court ruled, even if neither party formally submitted them to support or oppose this specific motion. *See Keller v. Armstrong World Industries, Inc.*, 342 Or 23, 30 n 5, 147 P3d 1154 (2006).

Ronald and Jean Harriman established the trust in 1995 as part of the dissolution of their marriage. The trust corpus includes real estate that requires active management. Ronald and Jean are the income beneficiaries of the trust during their lifetimes, and their children, Valerie and Anne, are the remainder beneficiaries. The trust agreement named Lawrence M. Carney as the trustee and provided that the trustee "shall be entitled to reasonable compensation for trust administration." It authorized the trustee to name a successor trustee or trustees to act "in the event the Trustee is unable or unwilling to continue to serve as Trustee of this Trust[.]" In that event, the successor trustee would "succeed to all rights, powers and duties of Trustee," and the previous trustee "shall execute such documents as are required by the Successor Trustee to transfer, without warranty, the assets of the trust estate to the Successor Trustee." Should the trustee fail to name a successor trustee, the United States National Bank (bank) would fill that role. Finally, the trust agreement expressly prohibited Ronald or Jean or both from serving as a successor trustee.

Carney, the original trustee, died without naming a successor, and the bank refused to accept its appointment as

his successor. In April 1999, Ronald and Jean agreed to appoint Arlie Hutchins as the trustee. In August 1999, Hutchins appointed Wilkins as the successor trustee and, in the same document, provided that, "[i]f [Wilkins] is unable to serve, resigns, or declines to serve, then [Valerie] shall serve as Successor Trustee." Hutchins continued to serve as the trustee after making those appointments, and neither Wilkins nor Valerie actually became the successor trustee at that time. On September 19, 2002, Hutchins wrote to Ronald and Jean, resigning as trustee effective October 15, 2002, because of the press of other business. In his letter, he stated:

> "I had previously selected [Wilkins] as Successor Trustee. In this regard, I hereby revoke that selection and make no new designation so that you may agree among yourselves as to whom may be best appointed to serve you. It is vitally important that you feel completely comfortable with the new Trustee."

Hutchins did not expressly revoke his appointment of Valerie as the successor if Wilkins did not fulfill that role, nor did he otherwise refer to Valerie.

Because Hutchins did not expressly revoke his appointment of Valerie, she believed that Hutchins' action left her as the successor trustee. She did not immediately assume that position but sought an alternative, in part because of the family issues that would inevitably arise if she were the trustee. The bank again refused to be the trustee but suggested Allen Trust as a possibility. On April 22, 2003, after Valerie had learned that Allen Trust would agree to be the trustee, she assumed the position of successor trustee in order to appoint Allen Trust as her successor. After making that appointment, she resigned as the trustee but retained the right to remove Allen Trust and to appoint herself as its successor. Valerie also appointed Anne, and in her absence Wilkins, to be the successor trustee if Valerie predeceased either Ronald or Jean.

The principal of Allen Trust, after reading the relevant documents, believed that Valerie was the successor trustee and that her appointment of Allen Trust as her successor was valid. Allen Trust accepted the appointment based on that belief. Hutchins, the previous trustee, also

treated Allen Trust as the proper successor, giving it his records as the trust agreement required.

Jean approved Valerie's actions in appointing Allen Trust, but Ronald did not. He and his agents quickly let Allen Trust know of his objections, among other things warning that it was doubtful that Allen Trust's fees and expenses would be paid. Because of Ronald's objections, Allen Trust and Jean petitioned the trial court for confirmation of Allen Trust as the trustee. Ronald objected to the petition and, after a hearing, the court denied Allen Trust's petition. The court stated that the idea that Valerie was the successor trustee was "nonsense." According to the court, Wilkins had not been unable to serve as trustee; rather, Hutchins had revoked his appointment. As a result, the contingency that would make Valerie the trustee never occurred. Because Valerie was not the trustee, her appointment of Allen Trust as the successor trustee was invalid. After stating its ruling, the court gave Ronald and Jean 14 days to agree on a trustee; if they did not, the court would appoint one. On appeal, no party challenges the trial court's decision on that issue.[1]

During the period between Valerie's purported appointment of Allen Trust as the trustee and the court's ruling, Allen Trust acted as the trustee and, in accordance with the terms of the trust agreement, received compensation for its services. In the belief that it would benefit the trust to have a judicial determination of whether it was the trustee, Allen Trust also used trust funds to pay its attorney's fees in the hearing on the petition to confirm its appointment. After the trial court's ruling on the confirmation petition, Ronald filed a petition to require Allen Trust to repay both the compensation that it had received for its services and the money that the trust had paid Allen Trust's attorney. Ronald then filed a motion for summary judgment on that petition. The court granted the motion for summary judgment, stating about Allen Trust that "it was very clear to me they weren't the trustee. They acted on their—at their own risk, and they paid themselves without going to court, and they have to pay it back." The court rejected Allen Trust's argument that a

---

[1] The current trustee, Cowlitz Bank, is a respondent on appeal but considers itself a neutral party and has not filed a brief.

person acting in the good faith but mistaken belief that it was the trustee was entitled to payment for the reasonable value of its services. Allen Trust appeals, assigning error to the granting of summary judgment to Ronald.

Because the court ruled on a motion for summary judgment, we must decide whether there is evidence that would support Allen Trust's entitlement under the terms of the trust to compensation for its services as trustee and to use trust funds to pay its attorney in the original hearing. We conclude that there is sufficient evidence to create a triable issue of fact with respect to Allen Trust's entitlement to compensation for its own services but not as to the attorney fees. For the reasons that we discuss below, the question is not, as the trial court apparently assumed, whether Allen Trust was, in fact, the trustee; as the case comes to us, it was not. Rather, the question is whether Allen Trust had a reasonable basis for believing that Valerie's appointment of it was valid and whether it relied on that appointment in good faith and acted as a trustee *de facto*.[2] That question raises factual issues that the court could not resolve on summary judgment.

■■ The parties focus their arguments on Allen Trust's status during the period that it acted as trustee of the trust. Allen Trust argues that it was a trustee *de facto* and thus is entitled to compensation for the reasonable value of its services. Ronald argues that one who undertakes the duties of a trustee without authorization is a trustee *de son tort* and is not entitled to compensation.[3] We initially observe that the

---

[2] Taken literally, "trustee *de facto*" could describe anyone who is not a trustee in fact but is potentially liable as a trustee. However, as explained below, the phrase usually refers to a person who has at least a colorable claim to be a trustee, who acts as one, and, in some instances, who seeks the benefits of one. *See, e.g.,* *Derby v. Newton,* 142 Or 427, 431, 20 P2d 439 (1933). That is how we use the phrase in this opinion.

[3] *Stephan v. Equitable S & L Assn.,* 268 Or 544, 559, 522 P2d 478 (1974), states:

"A person may become a trustee by construction by intermeddling with, and assuming the management of, trust property without authority. Such persons are trustees *de son tort*. During the possession and management by such constructive trustees, they are subject to the same rules and remedies as other trustees; and they cannot avoid their liability by showing that they were not, in fact, trustees * * *."

(Internal citations and quotation marks omitted.)

parties' arguments depend on the application of common law and equitable principles. The Oregon legislature has prescribed the authority and duties of trustees in ORS chapter 128. However, those statutes have not supplanted the common law and equitable principles pertaining to trusts in areas that they do not address. *See, e.g.*, ORS 128.735 (providing for recovery of attorney fees in action to enforce fiduciary duties of trustee arising under chapter 128 or common law). The parties do not assert that any statute governs the issues in this case, and we have not found any that informs our decision. Accordingly, we resolve the case based on applicable common law and equitable principles. We turn to them now.

Because each party relies on *Stephan v. Equitable S & L Assn.*, 268 Or 544, 522 P2d 478 (1974), to support its position, we will begin with that case. Paul Stephan died in 1937, leaving an estate that included a $50,000 four percent coupon bond that the defendant savings and loan association had issued. Stephan's will gave the defendant custody of the bond in trust, with his spouse to receive the income during her lifetime and his children to receive the principal when each reached 30 years of age. In accordance with the will, Stephan's spouse, as executor of his estate, turned over the bond to the defendant. In 1941, when the bond matured, the spouse asked the defendant to give her some of the principal, but the defendant refused on the ground that the will did not permit it to do so. Instead, the defendant proposed to replace the bond with five new $10,000 three percent bonds; after some discussion between the defendant and the spouse's attorney, the spouse accepted the change. The defendant thereafter reissued the bonds at three-year intervals, with interest reduced to two percent, until 1953. In that year, the defendant placed the money in "matured passbook accounts" because it no longer issued coupon bonds. It then paid the spouse the passbook rate, which gradually increased to more than five percent. *Stephan*, 268 Or at 549-55.

In 1970, Stephan's spouse and children, the beneficiaries under his will, sought an accounting of the trust from the defendant. The defendant replied that it did not have trust powers. The beneficiaries then filed a suit to require the

defendant to account for the trust and to pay the difference between what the bonds and savings accounts had produced and what they would have received if a prudent trustee had properly invested the money. In response, the defendant again denied that there was a trust, on the grounds both that the will did not contain the usual indicia of a trust and that Oregon law prohibited the defendant from acting as a trustee and from purchasing stocks or bonds. *Id.* at 556-57. The Supreme Court rejected the defendant's argument that there was no trust. It pointed out that the beneficiaries had relied for many years on the defendant's statements describing the coupon bonds as a trust fund. It was also clear to the court that the defendant undertook and assumed the management of the $50,000 that Stephan's will left in trust. Citing *Elliott v. Mosgrove*, 162 Or 507, 530, 91 P2d 82, 93 P2d 1070 (1939), the court noted that a person who assumes the duties of a trustee is as liable for improper conduct as if the person had been regularly appointed. *Stephan*, 268 Or at 557-58.

The court also rejected the defendant's argument that it could not be liable as a trustee because it did not have the legal authority to act in that capacity. The fact that the defendant may have exceeded its legal powers, the court held, did not affect its liability. Relying on an Illinois case, the court held that persons who undertake to execute trusts without the authority to do so are constructive trustees or trustees *de son tort*. While they possess and manage the trust, they are subject to the same rules and remedies as other trustees and cannot avoid liability by showing that they were not, in fact, trustees. *Id.* at 559-60 (quoting *Penn v. Fogler*, 182 Ill 76, 55 NE 192, 197 (1899)). Based on those conclusions, the court proceeded to evaluate the defendant's performance as a trustee and to grant the beneficiaries some of the relief that they requested. *Stephan*, 268 Or at 570-76.

Allen Trust, noting that, in *Stephan*, the court imposed liability on the defendant, argues that it thereby treated the defendant as a trustee *de facto*. It then argues that one who is liable for his or her actions as a trustee should also be entitled to the benefits of that position. In contrast, Ronald argues that the defendant in *Stephan* was a trustee *de son tort*, not a trustee *de facto*, and that the court held only

that the defendant was liable for its failures. Ronald points out that nothing in the court's opinion suggested that the defendant was entitled to any benefit from being a trustee.

The problem with both parties' arguments is that *Stephan* simply did not involve the issues that arise in this case. The issue in *Stephan* was a putative trustee's liability for breach of its responsibilities toward the plaintiffs, not its rights or authority as a trustee. The defendant had, in fact, acted as a trustee but attempted to avoid liability for breach of trust on the ground that it was legally incapable of being a trustee in fact. Not surprisingly, the court refused to let the defendant escape through that loophole, instead imposing the liability of a trustee *de son tort* on it. Contrary to Allen Trust's argument, the court did not suggest that the defendant was a trustee *de facto* or was otherwise entitled to any of the benefits of a trustee, including any right to compensation; that issue did not and, given the defendant's legal incapacity, probably could not arise.

On the other hand, contrary to Ronald's argument, the court did not consider the defendant's position as if it had had the legal capacity to be a trustee but had received a defective appointment. That issue also did not arise under the facts of the case. The court's holding was that, although the defendant had assumed the management of trust property without legal authority to do so, it was nevertheless subject to the liabilities of a trustee. That is generally the point of cases that discuss constructive trustees or trustees *de son tort*. *Stephan* says nothing about the benefits that a person who in good faith acted as a trustee may receive under the terms of the trust. We must look elsewhere to resolve the issues in this case.

Although neither *Stephan* nor any other case addresses the status of a trustee *de facto* under Oregon law, other jurisdictions have done so. In *In re Bankers Trust*, 403 F2d 16 (7th Cir 1968), the election of three successor trustees of a real estate investment trust failed to comply with certain provisions of the trust agreement; as a result, the election was ineffective and the successor trustees were not trustees in fact. They nevertheless took a number of actions on behalf of the trust, including filing a petition for reorganization in

bankruptcy. One of the issues on appeal was whether they were trustees *de facto* who had the power to file that petition. The court held that there are two essential elements for a person to be a trustee *de facto*: first, the person had to assume the office of trustee under a color of right or title; second, the person had to exercise the duties of the office. *Id.* at 20.

■        There was little dispute in *In re Bankers Trust* that the successor trustees had exercised the duties of their office; the issue before the court was whether they had assumed their positions under color of right or title. The court held that that required only that the trustees assert an authority that was derived from an election or appointment, no matter how irregular the election or appointment might be. After examining the procedure involved in electing the successor trustees, the court concluded that they "were not usurpers but assumed office in a manner thought to be correct by them and their predecessors." *Id.* at 20. After their elections, the successor trustees exercised the duties of their offices and achieved several important things for the trust. "Some one had to manage the trust after the September 12, 1966, resignation of the original trustees, and the three successor trustees filled this vacuum until the reorganization petition was filed and approved." *Id.* at 21. For those reasons, the good faith action of the successor trustees in filing the petition was binding on third parties and on the trust's stockholders. *Id.*

The court in *In re Bankers Trust* did not need to consider whether trustees *de facto* are entitled to compensation for their services while they acted as trustees. In *Crocker-Citizens National Bank v. Younger*, 4 Cal 3d 202, 93 Cal Rptr 214, 481 P2d 222 (1971), the California Supreme Court faced that issue. It held that a trustee *de facto* is entitled to compensation in the same circumstances that a duly appointed trustee would be and that those circumstances depend on the terms of the trust. In *Crocker-Citizens National Bank*, the trustor, Eckstrom, established a trust with the plaintiff bank as the trustee. Under the terms of the trust, Eckstrom's children, Thomas and Marie, were to receive certain amounts during their lives and charities were to receive distributions of principal at stated intervals. The trust established a committee to advise the trustee about which charities should

receive the distributions and expressly provided that members of the advisory committee were to receive reasonable fees for their services. The advisory committee also had the discretion after Eckstrom's death to determine that the amounts provided for Thomas and Marie were insufficient and to authorize the trustee to make additional payments of principal to them. *Id*. at 224-25.

The original members of the advisory committee were the trustee, Thomas, and one of Eckstrom's long-time friends. When the friend died in 1955, Thomas and the trustee were unable to agree on a replacement. The court then appointed a new committee member, who resigned in 1958. At that point, Thomas and the trustee agreed to appoint Marie to the committee. As a condition for the trustee to agree to her appointment, all three agreed in writing that Marie would be disqualified to decide whether she and her brother should receive additional payments. Instead, a temporary committee member would be appointed for the purpose. *Id*. at 225-26.

In 1966, Marie and Thomas sought payments of principal under the terms of the trust. They resisted the trustee's attempts to follow the agreement and appoint a temporary committee member in place of Marie, arguing that the restrictions on Marie's service were unenforceable. *Id*. at 226-27. The California Supreme Court agreed with Thomas and Marie that the conditions that the parties attempted to place on Marie's appointment were a deviation from the terms of the trust. However, instead of holding that Marie could act as a committee member without the restriction, it instead held that the restrictions made her appointment to the committee void. *Id*. at 227-28. In doing so, it applied the same analysis to trust advisors that it would apply to trustees. *Id*. at 228. It then held that the invalidity of Marie's appointment did not invalidate the actions that she took while she acted as a committee member. During that period, she was a *de facto* member of the committee, and her ostensible authority to act meant that her actions had the same effect as if she had been a *bona fide* member. *Id*. at 229 n 5.

The court then considered Marie's entitlement to compensation for her services while she was a *de facto* member of the committee. It held that, under the trust documents,

Marie and Thomas were both entitled to compensation for services that they rendered. Although Marie's appointment was void, for 10 years she gave good faith services to the trust, for which she should be compensated. Neither she nor Thomas, however, was entitled to compensation for services involved in the dispute over Marie's membership; the trust documents nowhere provided for compensation for such services. For the same reason, neither was entitled to reimbursement of attorney fees incurred in the litigation of that dispute. *Id.* at 230-31. Marie, thus, was entitled to the compensation that the trust provided for members of the committee, even though she was never a properly selected member of it.

Oregon courts have not considered the status of a trustee *de facto* under state law, but the only relevant decisions are consistent with *In re Bankers Trust* and *Crocker-Citizens National Bank*. In *Derby v. Newton*, 142 Or 427, 20 P2d 439 (1933), the Supreme Court, applying federal law, held that a bankruptcy trustee who failed to comply with the requirements to qualify as a trustee within the required time could nevertheless file an action for damages to the bankruptcy estate before qualifying. It quoted a federal case that described such a person as a *de facto* trustee. *Id.* at 431-32. Oregon thus recognizes trustees *de facto* under federal law.

*In re Workman's Estate*, 156 Or 333, 65 P2d 1395 (1937), considered a similar issue in the context of administering an estate. In that case, the trial court appointed Callan as the administrator of the estate despite the decedent's nomination in his will of Carruthers as the executor. The Supreme Court subsequently reversed the appointment of Callan and held that Carruthers was entitled to be the executor. *In re Workman's Estate*, 151 Or 475, 49 P2d 1136 (1935). While that case was on appeal, Callan administered the estate; by coincidence, the trial court approved his final accounting and closed the estate on the same day that the Supreme Court issued its opinion reversing his appointment. Carruthers thereafter sought to administer the estate afresh, essentially arguing that Callan's actions were nullities. *In re Workman's Estate*, 156 Or at 340-47. After holding that Carruthers's appeal did not stay Callan's appointment, *id.* at 347-54, the Supreme Court plurality turned to the validity of

Callan's actions during the period that he acted as administrator.[4] It quoted a number of cases from other states and secondary authorities, all of which stated that the actions of an administrator are valid and binding even if the appointment is voidable and the court later revokes it. *Id*. at 354-59. After citing several Oregon cases, *id*. at 359-62, the court concluded that the "same validity attends the conduct of the erroneously appointed administrator as if the office had been occupied by the proper individual." *Id*. at 362.

■    *In re Workman's Estate* does not in itself control this case. The issue concerned an executor or administrator under the relevant statutes rather than a trustee under the terms of a trust, and the prevailing opinion did not have the express support of a majority of the court. However, the case is the best available indication of the direction that the Supreme Court would take if it were presented with this issue and, as applied to trusts, it is consistent with the law elsewhere. In addition, the dissent in *In re Workman's Estate* did not challenge the authority of a defectively appointed administrator in the usual case but, rather, argued that Carruthers's act of filing an appeal operated to stay the trial court's appointment and that that stay invalidated most of Callan's actions. *Id*. at 369-85 (Kelly, J. dissenting). In a later case, the author of the dissent followed the plurality opinion on a different issue because he believed that it was controlling. *See In re Winters' Estate*, 159 Or 637, 644, 80 P2d 714 (1938). We conclude that the status of and the rules that govern a trustee *de facto* are consistent with Oregon law and we therefore adopt them.

The effect of those rules on this case is clear. The evidence in the record before us shows that Allen Trust was a trustee *de facto* when it administered the trust. That evidence shows that Allen Trust exercised the duties of the office and that Allen Trust assumed the office under a color of right or title, reasonably believing at the time that it was the trustee. Hutchins's letter of resignation expressly revoked his previous selection of Wilkins as the successor trustee but did not refer to his appointment of Valerie as the successor if Wilkins was unable to serve. The evidence in the record

---

[4] Three judges joined the court's opinion, one judge concurred without opinion, and three judges joined in a dissent.

before us also shows that Allen Trust reasonably concluded that Hutchins's action left his appointment of Valerie standing and, accordingly, that Valerie's appointment of Allen Trust as her successor was valid. Indeed, Hutchins's act of sending the trust records to Allen Trust suggested that he shared that conclusion.

If Allen Trust was a trustee *de facto*, under the analysis in *Crocker-Citizens National Bank*, it was entitled to compensation in the same circumstances that a trustee in fact would be. The trust expressly provides that the trustee is entitled to reasonable compensation and states that the reasonable compensation for a corporate fiduciary is determined by reference to the fiduciary's fee schedule. On the other hand, Allen Trust has not identified any provision in the trust agreement that authorized a putative trustee to use trust funds to defend its status as a trustee. Again, as in *Crocker-Citizens National Bank*, the lack of such a provision means that, even if Allen Trust was a trustee *de facto*, it is not entitled to recover its attorney fees in this litigation from the trust.[5]

Reversed and remanded as to compensation for Allen Trust Company's services as trustee; otherwise affirmed.

---

[5] That conclusion is consistent with *In re Estate of MacMullen*, 117 Or 505, 509-10, 243 P 89, 244 P 664 (1926), in which the court denied an administrator's request for attorney fees for services in a proceeding that led to the administrator's replacement on the ground that the original appointment was improper. It held that an administrator whose appointment is voidable may recover attorney fees for services that benefit the estate but not for services that benefit only the administrator.