[No. 36127-2-II.   Division Two.   April 29, 2008.]

*In the Matter of the Irrevocable Trust of* MICHAEL A. McKEAN, *Appellant.*

334

*John P. O'Connor*, for appellant.

*Robert B. Nettleton* (of *Neil, Nettleton & Neil, PS*) and *Robin H. Balsam*, for respondent.

¶1 ARMSTRONG, J. — Michael A. McKean appeals the trial court's refusal to vacate its order appointing Commencement Bay Guardianship Services as trustee of the Irrevocable Trust for Michael Allison McKean's Children (Trust) and dismiss this action. A trial court in another action had appointed Commencement Bay trustee, but we reversed that order after Commencement Bay initiated this litigation. Because Commencement Bay was acting as de facto trustee from the time of its original appointment, we affirm.

## FACTS

¶2 Michael A. McKean has two daughters, Michelle McKean, born in 1989, and Morgan McKean, born in 1996. Laura McKean, Michael's second wife, is Michelle's mother; Connie McKean, Michael's third wife, is Morgan's mother.

¶3 In 1992, Michael created the Trust for the benefit of Michelle and his future children. Michael funded the Trust in part with 100 shares of stock in Northwest Community Housing Corporation, a corporation Michael had incorporated in 1988. Michael also transferred to the Trust 20 percent of his "then owned" equity in 66 limited partnerships, which he valued at $275,000. Clerk's Papers (CP) at 787. The Trust contained a subtrust for the sole benefit of Michelle, Michael's only child at the time he settled the trust. Michael funded the subtrust with real property managed as a rental.

¶4 Michael named his close friend, Gale Dahlstrom, as the Trust's trustee. Although Dahlstrom signed the Trust documents as trustee, Michael led Dahlstrom to believe that he would have no active management responsibilities unless Michael passed away or was unable to manage the assets himself. Neither Michael nor Dahlstrom followed the formalities of trust management and administration after Michael created the Trust. Nobody filed trust tax returns for the years 1993 through 1997, different tax identification numbers were used for the Trust, and Michael commingled trust assets with nontrust assets.

¶5 In 1996, the federal government named Michael as a defendant in a civil lawsuit and began a criminal investigation of his activities related to the limited partnerships. When Michael learned of the lawsuit and the investigation, he began to transfer assets out of his name for the purpose of hiding them from the federal government. This included transferring additional assets to the Trust.

¶6 In 1998, Michael filed an action to dissolve his marriage to Connie.[1] The trial court in that action dissolved the marriage in November 2000. The dissolution court found that both Michael and Connie had abused the Trust, that Michael controlled the trustees, and that it should appoint a corporate trustee for the Trust. Michael appealed the dissolution order to this court.

¶7 In early 2000, Michael opened a bank account for the subtrust and Dahlstrom began receiving account statements as the trustee. Dahlstrom became concerned and, in August 2000, he signed a resignation of trustee, which he personally delivered to Michael. Michael did not inform Connie or the bank of Dahlstrom's resignation. In March 2002, Michael's sister, Shannon Keene, filed tax returns for the Trust for the years 1998 through 2000, signing the returns as the trustee.

¶8 In December 2001, while the appeal of the dissolution decree was pending, the dissolution court appointed Commencement Bay, a certified professional guardianship agency, as trustee of the Trust. On January 4, 2002, Commencement Bay initiated this action by filing a petition for instructions. The trial court directed Commencement Bay to serve a summons on Michael, Connie, Dahlstrom, and Keene under the Trust and Estate Dispute Resolution Act, chapter 11.96A RCW, which Commencement Bay did.

¶9 On February 1, 2002, we reversed and vacated the dissolution court's decision to appoint a corporate trustee for the Trust, holding that the dissolution court did not have personal jurisdiction over the trustees. *In re Marriage of McKean*, 110 Wn. App. 191, 195-96, 38 P.3d 1053 (2002).

¶10 Shortly after we issued our opinion in the dissolution action, Commencement Bay petitioned the trial court in this action for an order appointing it trustee of the Trust or, in the alternative, dismissing the action and relieving Commencement Bay of its responsibilities. Commencement

---

[1] Also in 1998, Michael pleaded guilty to six felony violations of federal law and began serving a prison sentence. He was released in late 1999.

Bay asserted that, after the dismissal in the dissolution action, another order appointing it as trustee was necessary to protect the children's assets. Michael also moved for an order dismissing Commencement Bay from this case.

¶11 On March 12, 2002, the trial court appointed Commencement Bay trustee of the Trust as of January 4, 2002, nunc pro tunc. The trial court found that the order was necessary to preserve the children's assets and to protect them from waste, theft, and fraud. It also found that entry of the order nunc pro tunc was necessary to protect the children's rights and that it did not prejudice Michael's rights.[2]

¶12 Before this case proceeded to trial in 2006, Michael again moved to vacate the order appointing Commencement Bay as the Trust's trustee and all other orders in this case, and to dismiss the case. The trial court denied the motion, ruling that it had "the inherent power, duty and jurisdiction to protect children who are beneficiaries of trusts." CP at 696.

¶13 After a bench trial, the trial court found that Michael had disavowed his gift of 100 shares of Northwest Community Housing stock to the Trust to prevent Commencement Bay from managing funds that would be distributed to the Trust from Northwest Community Housing. McKean had made inconsistent statements in other proceedings about the Trust's ownership of Northwest Community Housing stock. The trial court also found that if Commencement Bay had not been appointed trustee, McKean would not have denied the validity of the gift of Northwest Community Housing stock to the Trust. The

---

[2] In 2004, Commencement Bay petitioned for the appointment of a limited guardian to manage Morgan's and Michelle's individual nontrust assets and to monitor their beneficial interests in trust assets. In an unpublished opinion, we affirmed the appointment of Guardianship Services of the South Sound for this purpose. *In re Guardianship of McKean*, noted at 126 Wn. App. 1028, 2005 Wash. App. LEXIS 452. We later affirmed an award to the guardian and its attorneys of the fees and costs they incurred in identifying, verifying, and marshalling the girls' trust and nontrust assets but directed the trial court to apportion the award among the parties whose conduct created the need for the guardianships. *In re Guardianship of McKean*, 136 Wn. App. 906, 921, 151 P.3d 223 (2007).

trial court concluded that the Trust owned 100 shares of Northwest Community Housing stock and ordered that 20 percent of any funds distributed to Northwest Community Housing be transferred to the Trust.

¶14 Michael appeals (1) the trial court's denial of his motion to vacate the order appointing Commencement Bay as trustee and to dismiss the case and (2) the order requiring distribution of 20 percent of all funds Northwest Community Housing receives to the Trust.

## ANALYSIS

### I. COMMENCEMENT BAY'S STANDING

¶15 Michael argues that the trial court lacked jurisdiction over this action because, once we vacated the dissolution court's order requiring appointment of a corporate trustee, the dissolution court's appointment of Commencement Bay became void and Commencement Bay did not have standing to bring the petition in this action.

¶16 An order or judgment is void if the court that issued it lacked jurisdiction over the parties or subject matter of the dispute.[3] Whether a trial court has jurisdiction is a question of law, which we review de novo. *Crosby v. Spokane County*, 137 Wn.2d 296, 301, 971 P.2d 32 (1999). Whether a party has standing to invoke a court's jurisdiction is also a question of law, which we also review de novo. *Wolstein v. Yorkshire Ins. Co.*, 97 Wn. App. 201, 206, 985 P.2d 400 (1999).

¶17 McKean first asserts that, under RAP 7.2, the dissolution court lacked authority to appoint Commencement Bay as trustee of the Trust while the appeal was pending. He points out that, after the appellate court accepts review of a case, "the trial court has authority to act

---

[3] A superior court has subject matter jurisdiction over "trusts and all matters relating to trusts," and may "administer and settle all matters relating to trusts." RCW 11.96A.040(2), (3). Michael does not challenge the trial court's subject matter jurisdiction.

in a case only to the extent provided in this rule." RAP 7.2(a). The rule provides, however, that in a civil case, "except to the extent enforcement of a judgment or decision has been stayed as provided in rules 8.1 or 8.3, the trial court has authority to enforce any decision of the trial court." RAP 7.2(c). McKean did not ask us to stay enforcement of the dissolution decree while the appeal was pending. Accordingly, the dissolution court had authority during the pendency of the appeal to enforce its ruling by appointing a corporate trustee. The rule also provides that "[a]ny person may take action premised on the validity of a trial court judgment or decision until enforcement of the judgment or decision is stayed as provided in rules 8.1 or 8.3." RAP 7.2(c). Commencement Bay thus could validly petition the trial court in this matter for instructions related to its appointment as the Trust's trustee.

¶18 McKean next argues that, because our decision in the dissolution case rendered the dissolution court's order appointing Commencement Bay trustee void, Commencement Bay had no standing to initiate this case. But the dissolution court had authority to enforce its decision by appointing Commencement Bay as trustee. RAP 7.2(c). Accordingly, as of January 4, 2002, the date Commencement Bay commenced this action, Commencement Bay was the Trust's trustee. RCW 11.96A.080(1) provides that "any party" may have a judicial proceeding for the declaration of rights or legal relations with respect to trust matters. And RCW 11.96A.030(4)(b) defines a "party" to include a trustee. Commencement Bay had standing to initiate this proceeding in January 2002.

¶19 The question then becomes whether the trial court in this action could appoint Commencement Bay as the trustee after we invalidated the dissolution court's order requiring appointment of a corporate trustee. Michael asserts that once we rendered the dissolution court's appointment void, all subsequent orders based on that ruling were also void.

¶20 Commencement Bay advances several theories in support of the trial court's authority to make the appointment, including that because Commencement Bay assumed the position of trustee under color of right and exercised a trustee's duties in good faith, it became the "de facto trustee." Br. of Resp't at 17-18. Commencement Bay also points to the act's grant of plenary powers to the trial court to administer and settle all trust-related matters.

¶21 Although no Washington court has recognized the authority of a de facto trustee in a trust proceeding,[4] the Oregon Court of Appeals recently adopted the de facto trustee concept in a similar setting. *Allen Trust Co. v. Cowlitz Bank*, 210 Or. App. 648, 660, 152 P.3d 974, *adhered to on recons.*, 212 Or. App. 572, 159 P.3d 319 (2007). In that case, a person believing herself to be trustee appointed a successor trustee, but the trial court later invalidated the appointing trustee's status as trustee, thereby removing her authority to appoint a successor. *Allen Trust*, 210 Or. App. at 651-52. The appellate court adopted the rule from *In re Bankers Trust*, 403 F.2d 16, 20 (7th Cir. 1968), that a person is a de facto trustee where the person (1) assumed the office of trustee under a color of right or title and (2) exercised the duties of the office. *Allen Trust*, 210 Or. App. at 657, 660. A person assumes the position of trustee under color of right or title where the person asserts "an authority that was derived from an election or appointment, no matter how irregular the election or appointment might be."[5] *Allen Trust*, 210 Or. App. at 657 (citing *Bankers Trust*, 403 F.2d at 20). A de facto trustee's good faith actions are binding on third persons. *Bankers Trust*, 403 F.2d at 21. Because the purported successor trustee in *Allen Trust* acted as trustee and assumed its office through an appointment it reasonably believed to be effective, it was a de facto

---

[4] Washington courts have recognized de facto trustees in corporate law. *See, e.g., Puget Sound Pulp & Timber Co. v. Clear Lake Cedar Corp.*, 15 Wn.2d 707, 711-12, 132 P.2d 363. (1942).

[5] A de facto trustee cannot be a " 'mere volunteer.' " *Bankers Trust*, 403 F.2d at 20 (quoting WILLIAM MEADE FLETCHER, CYCLOPEDIA OF THE LAW OF CORPORATIONS § 374, at 203 (rev. ed. 1954)).

trustee and was entitled to compensation for its services. *Allen Trust*, 210 Or. App. at 660-61. Other jurisdictions have also used the de facto trustee concept. *See, e.g., Creel v. Martin*, 454 So. 2d 1350 (Ala. 1984); *In re Estate of Dakin*, 58 Misc. 2d 736, 296 N.Y.S.2d 742 (1968); *In re Testamentary Trust of Daniel*, 1970 OK 34, 466 P.2d 647.

¶22 Washington courts have recognized a similar concept in de facto guardians. In *In re Guardianship of Bouchat*, 11 Wn. App. 369, 522 P.2d 1168 (1974), Division One of this court held that an order appointing a guardian was void where notice to the ward was defective, but it approved reimbursement of funds the de facto guardian expended in good faith for the ward's benefit. *Bouchat*, 11 Wn. App. at 371-72. And in *King v. Sells*, 193 Wash. 294, 75 P.2d 130 (1938), our Supreme Court assumed without deciding that a person was a de facto guardian and that a de facto guardian's duties are "measured by the same standard as a legally appointed guardian." *King*, 193 Wash. at 296. Because the concept of a de facto trustee is consistent with Washington law, we adopt it here.

¶23 Commencement Bay assumed the office of trustee under color of right when the dissolution court appointed it trustee. And Commencement Bay acted as the trustee, marshalling and protecting the Trust's assets. Commencement Bay reasonably believed it was the trustee and acted in good faith. The irregularity in the dissolution court's appointment did not invalidate Commencement Bay's de facto trustee status. *Allen Trust*, 210 Or. App. at 657.

¶24 As de facto trustee, Commencement Bay was a "person who has an interest in the subject of the particular proceeding" and was, therefore, a "party." RCW 11.96A-.030(4)(i). As a "party," Commencement Bay was entitled to a judicial proceeding for the declaration of rights or legal relations with respect to the Trust. RCW 11.96A.080(1). The trial court thus had personal jurisdiction over Commencement Bay even after we invalidated the dissolution court's appointment.

¶25 The act's grant of plenary powers to the trial court lends additional support to the trial court's authority to appoint Commencement Bay as trustee. The legislature provided that it intended courts to have "full and ample power and authority" to administer and settle all trusts and trust matters under the act. RCW 11.96A.020(1). Moreover, it provided that, if the act

> should in any case or under any circumstances be inapplicable, insufficient, or doubtful with reference to the administration and settlement of [trusts and trust matters], the court nevertheless has full power and authority to proceed with such administration and settlement in any manner and way that to the court seems right and proper, all to the end that the matters be expeditiously administered and settled by the court.

RCW 11.96A.020(2).

¶26 This case presented the trial court with the very situation RCW 11.96A.020(2) describes. A trustee had come before it to seek guidance with respect to a Trust that the trustee believed to be at risk from the settlor's actions. A trial court in another action had found that the settlor and his ex-wife had abused the Trust and that an independent trustee was necessary. The trustee had begun the work of marshalling and protecting the assets and it believed that the trustor was liquidating Trust assets to the derogation of the beneficiaries. The Court of Appeals then vacated the trustee's appointment, making it doubtful whether the trustee had standing under the act. And the mother of a Trust beneficiary, a party to the action, requested on her daughter's behalf that the court allow the trustee to continue in its position. Given the trial court's authority to take action in the face of uncertainty, and its primary duty to protect the assets of the Trust beneficiaries, we are unwilling to invalidate the de facto trustee's efforts on behalf of the Trust beneficiaries under the court's appointment.

¶27 Michael also challenges the nunc pro tunc status of the order appointing Commencement Bay, arguing that the trial court could not make its March 12, 2002 order

effective as of January 4, 2002, because it did not actually appoint Commencement Bay as trustee in January 2002. Michael is correct that a nunc pro tunc order is not a proper remedy for a prior omission. *State v. Rosenbaum*, 56 Wn. App. 407, 411, 784 P.2d 166 (1989). But because Commencement Bay was a de facto trustee when it commenced the action, the trial court's misuse of the nunc pro tunc procedure is immaterial. The trial court's March 2002 order appointing Commencement Bay trustee converted Commencement Bay from a de facto trustee to a legal trustee. But it was not necessary to validate the trial court's prior orders or Commencement Bay's prior acts. *See Bankers Trust*, 403 F.2d at 21 (de facto trustee's actions are binding on third persons).

¶28 Accordingly, the trial court did not err in denying Michael's motion to vacate the order appointing Commencement Bay as trustee and dismiss the action.

II. DISTRIBUTION OF NORTHWEST COMMUNITY HOUSING FUNDS

¶29 Michael also assigns error to the trial court's order directing that the Trust receive 20 percent of any funds distributed to Northwest Community Housing. He asserts that Northwest Community Housing was not a party to this action and, thus, the trial court did not have jurisdiction to order it to do anything, and that the trial court's order fails to take into account any possible expenses Northwest Community Housing might have to pay before making a distribution to its shareholders.

¶30 But Michael cites no legal authority to support these arguments and he makes only conclusory assertions. We do not consider arguments unsupported by argument or legal authority. *Bercier v. Kiga*, 127 Wn. App. 809, 824, 103 P.3d 232 (2004) (citing *State v. Dennison*, 115 Wn.2d 609, 629, 801 P.2d 193 (1990)). Accordingly, we decline to review these issues.

## III. ATTORNEY FEES

¶31 Commencement Bay requests an award of attorney fees and trustee fees on appeal against Michael under RAP 18.1(a), which allows attorney fees on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses." Under RCW 11.96A-.150(1), in a trust action, we "may, in [our] discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings."

¶32 Commencement Bay asserts that Michael, as the party who acted in bad faith, should pay fees and costs. The trial court awarded Commencement Bay its attorney fees against Michael. The Trust assets should not be further depleted by Michael's continuing efforts to frustrate the purposes of the Trust he established for his children in 1992. Commencement Bay is entitled to its fees and costs on appeal and we award them against Michael.

¶33 Affirmed.

HOUGHTON, C.J., and HUNT, J., concur.